THAD RAY v. FRENCH BROAD ELECTRIC MEMBERSHIP CORPORA-
TION AND W. B. WOODY, DEFENDANTS, AND TOM RAY, ADDITIONAL
PARTY.

(Filed 27 April, 1960.)

**1. Automobiles § 38—**

An officer standing at an intersection and observing a car approach-
ing for a distance of 50 feet is competent to give his opinion of the
speed of such car notwithstanding his prior statement that he couldn't
determine the speed but had an opinion in regard thereto, the weight to
be given his testimony being for the determination of the jury.

**2. Appeal and Error § 41—**

The admission of testimony over defendants' objection as to a particu-
lar fact cannot be prejudicial when defendant's own testimony thereafter
establishes the identical matter.

**3. Same—**

The admission of testimony over defendants' objection as to a par-
ticular fact cannot be prejudicial when defendants' allege the identical
matter in their separate answers.

**4. Automobiles §§ 41g, 42g—**

Where there is testimony by each driver that he entered the inter-
section when the traffic control signal facing him was green, the conflict-
ing evidence is for the determination of the jury both on the question
of negligence and the question of contributory negligence, and the sub-
mission of the issues to the jury under correct instructions, including
the duty of motorists to keep a proper lookout, and the duty of the motor-
ist turning left at the intersection to give a proper signal thereof, *held*
without error.

**5. Negligence § 26—**

Nonsuit on the ground of contributory negligence is properly denied
unless plaintiff's own evidence establishes the facts necessary to show
contributory negligence as a matter of law so clearly that no other con-
clusion can be reasonably drawn therefrom.

**6. Pleadings § 25—**

When the rights of innocent third persons are not affected, an amend-
ment relates back to the commencement of the action.

**7. Pleadings § 8—**

A counterclaim is in effect a statement of a cause of action on the part
of the defendant against the plaintiff.

**8. Master and Servant § 86—**

Under G.S. 97-10 the insurance carrier which has paid the claim for
an injury to an employee has the exclusive right for the period of six
months from the date of the injury to maintain an action against the
third person tort-feasor for negligence causing the injury, and when a
counterclaim is set up by such injured employee the court properly al-

lows an amendment to allege that the counterclaim was being prosecuted by the insurer in the name of the employee and correctly charges the jury in regard thereto. The repeal of G.S. 97-10 by the Act of 1959, by its express terms, does not apply to an injury occurring prior to its ratification. (G.S. 97-10.1, G.S. 97-10.2, G.S. 97-10.3)

**9. Appeal and Error § 20—**

A party may not complain of an error in the charge which is favorable to him

**10. Appeal and Error § 40—**

The burden is on appellant not only to show error but to show that the alleged error was prejudicial to him.

APPEAL by defendants from *Huskins, J.,* August 1959 Term, of YANCEY.

Civil action to recover damages for personal injuries resulting from an intersection automobile collision, in which both defendants plead in separate answers contributory negligence of plaintiff, and the corporate defendant pleads a counterclaim for compensation for damage to its automobile against plaintiff and Tom Ray, the owner of the automobile plaintiff was driving as his servant, agent and employee in the course of his employment,· and the male defendant pleads a counterclaim for damages for personal injuries against plaintiff and Tom Ray, and in which they pray Tom Ray be joined as a party defendant. Tom Ray was made a party defendant, and filed separate replies to the counterclaim of the defendants, in which he pleads contributory negligence of both defendants, and a counterclaim against both defendants for compensation for damage to his automobile. Plaintiff filed replies to defendants' counterclaims pleading contributory negligence of Woody, agent, servant and· employee of corporate defendant.

The jury found by its verdict that plaintiff's injuries were caused by the negligence of defendant Woody, as alleged in his complaint, that Woody at the time was the agent or employee of the corporate defendant, and was engaged in the discharge of his duties (this was by consent), that plaintiff was not guilty of contributory negligence, and awarded damages in the amount of $10,000.00. The jury did not answer the issues arising on the counterclaims of the original defendants. No issue was presented to the jury as to the counterclaim of Tom Ray.

From judgment entered on the verdict, both defendants appeal.

*Uzzell and Dumont and C. P. Randolph for plaintiff, appellee, and additional party, appellee.*

*William J. Cocke and R. W. Wilson for defendants, appellants.*

PARKER, J.    The defendants, who filed a joint brief, assign as error the denial of their motions for judgment of nonsuit renewed at the close of all the evidence. Defendants argue in their brief that plaintiff's evidence establishes facts necessary to show contributory negligence so clearly that no other conclusion can be reasonably drawn therefrom.

Plaintiff's evidence shows the following facts: The collision between a 1951 International truck driven by plaintiff and owned by Tom Ray and a 1957 GMC truck driven by defendant Woody and owned by the corporate defendant occurred about noon on 13 June 1958 in about the middle of the intersection of East Main and Summit Streets in a residential district within the corporate limits of the town of Burnsville. The streets were dry and the weather was clear.

The scene of the collision is clearly shown by the map set forth below, which was introduced in evidence by the corporate defendant

MAP OF INTERSECTION OF
EAST MAIN STREET, AZALEA STREET AND HIGH STREET
TOWN OF BURNSVILLE
YANCEY COUNTY, N. C.
Scale 1"=10'        August 17, 1959
D.N. SHOLES, REGISTERED ENGINEER

to illustrate the testimony of its witness D. M. Sholes, when he was being examined in chief. The record shows the map was attached to the blackboard. The evidence of plaintiff and defendants show that High Street shown on this map is the same as Summit Street. Hereafter, it will be called Summit Street, as it is called in the evidence of both sides.

This is a summary of plaintiff's testimony when he was examined in chief: He drove down Azalea Street until he came to the Stop sign on Azalea Street, where he stopped, at which time the overhead traffic control light at the intersection of Summit and East Main Streets was red. Where he stopped, he could see all of Summit Street and about half or down middleways of East Main Street. He could see the white line on the south side of East Main Street: on the north side he could not. He saw no traffic at the intersection, and none on Summit Street, and none on Ivy Street meeting him. He saw no traffic on East Main Street west of the traffic control light at the intersection, and there was none on East Main Street east of the traffic control light. When the traffic control light facing him turned green, he drove on his right hand side, after he had looked up Summit Street for approaching traffic. He was travelling facing and watching Ivy Street and down East Main Street as far as he could see. The farther he drove the farther he could see. As he started off into the main part, he could see about 150 feet down the east side. He did not see any traffic. He looked down Ivy Street, and looked up to see if anything was coming down travelling east on East Main Street, and when he got out about the middle of the road, he 'cut to go down Ivy Street and saw a red flash coming up hitting him from the left side. The next thing he remembers is about six hours later in the hospital.

On cross-examination he testified in part: "When I came to the Stop sign on Azalea Lane, I came to a full and complete stop. And when I started off from there and before I had the collision, I had my truck in low gear coming around there 5 miles an hour. My brakes were good. . . . When I came to Main Street I had the red light in my favor. I did not stop at the edge of concrete. . . . When I came to the edge of Main Street I was looking down at East Main Street and Ivy Street. I looked at the red light before I came out there. . . . The wreck didn't occur before I had moved 10 feet. I was starting to make my turn. I was coming towards Ivy Street. I was not going down Ivy. I was going down East Main Street. I had travelled 10 feet or better after I left the north edge of East Main Street on the concrete before the collision occurred. The collision occurred, I would say, after I drove into the intersection about 30 feet or a little better. I had come

out about 30 feet. I was out in the middle of the street or a little over. I did travel from the Stop sign to the northern edge of East Main Street. At that point I could see about 150 feet or 200 feet down the street. I saw about 200 feet down there, and looked back to see if anything coming in Ivy and back up there, and as I turned back down, I was hit. I saw a red flash; and that's all I remember." He did not go west of the light.

John Ollis, a policeman of the town of Burnsville and a witness for plaintiff, was standing at the intersection watching the overhead traffic control light which was not working regularly, and saw the collision between plaintiff's truck and defendant Woody's truck in about the center of the intersection of Summit and East Main Streets. This is a summary of his testimony: He heard tires squealing on the Woody truck. He saw plaintiff's truck coming out of the Summit Street intersection at a speed of from five to eight miles an hour to East Main Street. At that time he saw defendant Woody's truck in plain view about 50 feet east of the intersection on East Main Street going west. East Main Street is straight there. From the traffic signal where he was standing looking east on East Main Street you can see around 300 yards. There was nothing between him and Woody's truck on East Main Street to obstruct his view. The Woody truck was in the vicinity of the white line across East Main Street when he first saw it. He assisted State Highway Patrolman A. W. Rector to make measurements. (Patrolman Rector had testified as a witness for plaintiff prior to John Ollis. Patrolman Rector testified that east of the overhead traffic control light at the intersection of Summit and East Main Streets there is a white line painted across East Main Street (c to d on the sketch he made on the blackboard to illustrate his testimony, a picture of which sketch is part of the record and signed by counsel of record), and that from this white line to the traffic control light is a distance of 70 feet and 5 inches). Ollis testified: "When I first saw the GMC truck, the International truck had already entered the right-hand lane of East Main Street traveling towards Burnsville. It was on the north side of East Main Street. As this International pickup came out and turned down East on East Main Street, this red French Broad truck traveling west on East Main Street collided in about the center of the intersection. After the impact, the GMC truck came on across East Main Street to the south side and collided with the side of the automobile I was standing on. I don't know what happened to me. I must have climbed that light pole. When I found myself, I was on the ground. The automobile I was standing on was hit in the left side near the door and it knocked it into the side there about four

feet." Ollis was asked on direct examination, how fast Woody was driving? He replied, "I can't determine his speed. I have an opinion." He was then asked, "what is that opinion?" Over defendants' objection the court permitted him to answer, "I would say from 40 to 45 miles per hour." Defendants assign as error the admission in evidence of the testimony as to speed, and also assign as error the refusal of the court to strike the answer as to speed.

In *Tyndall v. Hines Co.*, 226 N.C. 620, 39 S.E. 2d 828, the Court said: "So now, any person of ordinary intelligence who has had an opportunity for observation is competent to testify as to the rate of speed of an automobile or other moving object."

In *Burton v. Oldfield*, 1952, 194 Va. 43, 72 S.E. 2d 357, the Court stated: "Defendant assigns error to the admission in evidence of Reeb's estimate of the speed of defendant's car, referred to above. Reeb estimated that when he first saw the Burton car it was about 90 feet away and defendant argues that he had no opportunity to make a valid estimate. We agree with the trial court that the evidence was admissible for such weight as the jury thought it should have."

*Fleming v. Twiggs*, 244 N.C. 666, 94 S.E. 2d 821; and *S. v. Becker*, 241 N.C. 321, 85 S.E. 2d 327, relied on by defendants, are distinguishable. In the *Fleming* case, the witness as to the speed of defendant's automobile saw it seven or nine feet or half the length of the courtroom behind the Fleming car, and looked away before the impact. In the *Becker* case, the witness as to the speed of defendant's automobile — 55 miles an hour — testified that she first saw this automobile at a point 15 feet from her, she then looked toward her husband and saw him shove her son aside before it struck her and the girls. The undisputed evidence in the case, if the witness was correct in her estimate of the distance between her and the automobile when she first saw it, is that the automobile stopped within 25 feet of that point.

In our opinion, it cannot be held as a matter of law that John Ollis, a police officer of the town of Burnsville standing at the intersection with nothing to obstruct his view of defendant Woody's approaching truck, and under the circumstances as shown by his testimony, did not have a reasonable opportunity to form an intelligent opinion as to the speed of Woody's truck, which was sufficiently reliable to be admissible in evidence for the consideration of the jury. That the question as to the opportunity of Ollis to estimate, under the particular circumstances shown by his testimony, the speed of Woody's truck goes to the weight of his testimony rather than to its admissibility. *Tyndall v. Hines Co., supra; Jones v. Bagwell*, 207 N.C. 378, 385, 177 S.

E. 170, 174; *Hicks v. Love,* 201 N.C. 773, 161 S.E. 394. The assignments of error as to Ollis' testimony as to the speed of Woody's truck are overruled.

A. W. Rector, a State Highway Patrolman and a witness for plaintiff, arrived at the scene of collision about ten or fifteen minutes after it occurred, and investigated it. His testimony tends to show that a great deal of glass and dirt and debris was lying near the center of the highway, and back east of this debris were white marks on the concrete about the width of a truck tire 36 feet in length, that the rear of plaintiff's truck was 32 feet from the debris. He testified, "the center of the debris was in the north lane of East Main Street." A four-sided traffic control light hangs overhead at the intersection. It hangs just east of the center of Summit Street in the middle of East Main Street.

Defendants assign as error that the trial court permitted Rector, over their objection, to testify that this traffic control light controls traffic travelling east and west on East Main Street and traffic entering East Main Street from Summit Street and traffic entering East Main Street from Ivy Street. Defendants in their brief contend, "what traffic it would control or what legal effect the light had was a question for the court in its charge, and it was not competent for the State Highway Patrolman to testify as to what streets it controlled or how it controlled traffic." If such evidence were incompetent, it was rendered harmless by defendants' evidence. Defendant Woody testified on his examination in chief: "As I approached the intersection at Summit and 19E (19E is East Main Street) the traffic light was red and I saw it about 500 feet down the road and I started coasting into a stop and when I got up within about 100 feet to the white line where I was supposed to stop, the light changed from red to green and I started on up the road." On recross-examination, Woody testified: "There is a traffic signal light there for traffic coming out of Summit St. and for traffic on E. Main St. and on Ivy St."

Defendants assign as error the admission in evidence, over their objection, of the testimony of Ralph Peterson, a witness for plaintiff who had worked for the town of Burnsville as street supervisor and chief of police, that he put the Stop sign on Azalea Street to stop traffic on Azalea Street entering Summit Street. The defendants alleged in their separate answers that the State Highway Commission and the town of Burnsville had erected this Stop sign to notify drivers of automobiles on Summit Street to come to a full stop before entering or crossing East Main Street, and that plaintiff negligently

ran through this Stop sign erected by the State Highway Commission and the town of Burnsville. This assignment of error is overruled.

The other assignments of error to the admission of evidence do not merit discussion, and all are overruled.

In our opinion, there is sufficient evidence of defendants' negligence to carry the case to the jury, and that plaintiff's evidence does not establish facts necessary to show contributory negligence as a matter of law so clearly that no other conclusion can be reasonably drawn therefrom. *Bondurant v. Mastin*, 252 N.C. 190, ...... S.E. 2d ....... The trial court properly left to the jury the questions as to whether or not plaintiff was keeping a proper lookout for other vehicles, exercised due care for his safety, contributed to his injuries in failing to give a signal for a left turn at an intersection, etc. The court correctly denied defendants' motion for judgment of nonsuit renewed at the close of all the evidence.

The date of the collision here was 13 June 1958. Summons for defendants were issued on 8 October 1958, and served on them on 13 October 1958. The complaint was filed on 8 October 1958. The answers and counterclaims of defendants were filed on 25 November 1958. On 2 January 1959 plaintiff filed a reply to defendant Woody's counterclaim alleging that Woody was an employee of the corporate defendant, that he and the corporate defendant were subject to and bound by the provisions of the N. C. Workmen's Compensation Act, that the Employers Mutual Liability Insurance Company of Wisconsin was the workmen's compensation insurance carrier, that the injuries received by Woody arose out of and in the course of his employment, and that the insurance carrier has acknowledged in writing with the N. C. Industrial Commission its liability for Woody's injuries, benefits and medical expenses, and that the Industrial Commission has made an award or awards to him. That the corporate defendant and the insurance carrier are subrogated to Woody's rights in the amounts paid by them, and have the exclusive right under the statute to institute any action for Woody's injuries within six months from the date thereof. That Woody's counterclaim instituted within six months from the date of his injury should be dismissed, as nothing on its face indicates that it was instituted by the carrier or employer in the name of Woody. On 12 January 1959 defendant Woody filed a motion in writing asking that all of plaintiff's allegations in his reply in respect to the dismissal of his counterclaim be stricken. At the March term 1959 Farthing, J., entered an order denying Woody's motion to strike all the allegations in plaintiff's reply in respect to the dismissal of his counterclaim, and decreed as

follows: "It is further ordered, in the discretion of the Court, that an amendment is allowed to the Counterclaim of W. B. Woody to allege that the counterclaim is prosecuted by Employers Mutual Liability Insurance Company in the name of the employee, pursuant to G.S., Sec. 97-10, the said defendant W. B. Woody being within the provisions of the Workmen's Compensation Act as an employee of French Broad Electric Membership Corporation; said amendment to be filed within twenty days." Defendant Woody excepted to the order "overruling his prayer that his counterclaim be considered by the court as having been filed more than six months from June 13, 1958," and to the denial of the court to strike, as set forth above. On 20 March 1959 Woody's answer in respect to the counterclaim was amended as follows:

"7. That at the time and on the occasion hereinbefore referred to, this defendant was an employee of his codefendant French Broad Electric Membership Corporation, and that the injuries hereinbefore described were sustained by him by accident arising out of and in the course of said employment and that the said French Broad Electric Membership Corporation and this defendant were and are bound by the provisions of the North Carolina Workmen's Compensation Act; that Employers Mutual Liability Insurance Company of Wisconsin was the workmen's compensation carrier of the said codefendant; that this defendant has accepted compensation under said Act from the carrier; that this counterclaim was interposed in the name of this defendant by said carrier, this action having been instituted prior to the expiration of six months from date of said injuries, and that the amount recoverable on this counterclaim is to be applied pursuant to G.S., Section 97-10, first to the expenses as set forth in said Act; second, to the reimbursement of the carrier for any sums paid or to be paid pursuant to its liability under said Act, and, third, if there be any excess the balance to this defendant."

Defendants offered in evidence this amendment. Defendants assign as error this part of the charge: "So, gentlemen, under that law, this action having been commenced within less than six months from the date the accident occurred, the right to prosecute an action on behalf of W. B. Woody against Thad Ray and Tom Ray was, by law, vested in French Broad and its insurance carrier; and so they brought this action under that law in W. B. Woody's name. They brought their counterclaim or cross action against Thad Ray and Tom Ray."

Defendants' argument in their brief is: "The date of the accident, June 13, 1958, the date of the original summons, October 8, 1958. The Answer and Counterclaim of Woody was filed November 25, 1958. The Reply of the plaintiff and the plea in bar therein attempted alleging that the defendant Woody was barred from setting up his counterclaim by reason of G.S. 97-10 was filed January 2, 1959. This plea was first made, therefore, January 2, 1959. The six-month period from the accident expired December 13, 1958, and at the time of filing the plea there was no bar against Woody's counterclaim."

Woody having accepted compensation under the Workmen's Compensation Act from the corporate defendant's insurance carrier, G.S. 97-10 provides that it has the exclusive right to commence an action in its own name and/or in the name of Woody for damages on account of his injuries against the third person. This same statute requires the recovery, if one is had, in the action against the third person to be disbursed in a specific manner. *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E. 2d 886. This same statute provides that "where an injured employee has accepted compensation under our Workmen's Compensation Act, no action instituted within six months from the date of the injury may be maintained in the name of the injured employee, unless the complaint discloses that the action was instituted in the name of such injured employee by either the employer or his carrier." *Taylor v. Hunt*, 245 N.C. 212, 95 S.E. 2d 589.

Woody's counterclaim filed on 25 November 1958, within six months from the date of his injury, does not show it was instituted in his name by his employer or the insurance carrier, and Woody has pleaded no waiver of such right by the insurance carrier or by his employer.

Woody did not institute the action, but filed a counterclaim. This is said in McIntosh's North Carolina Practice and Procedure, 2nd Ed., Vol. I, § 1243: "Since a counterclaim is a cause of action upon which the defendant might sustain a separate action against the plaintiff, he has his election to plead it as counterclaim or to bring another action. . . . In the case of collision between two automobiles where the owner of each car contended that the other car was in fault and claimed damages, it was held that there was only one cause of action — the collision—and if one party was sued by the other, the latter did not have his election to plead a counterclaim for damages or to bring another action." In such a case the collision is one transaction, and the whole matter should be determined in one action. *Allen v. Salley*, 179 N.C. 147, 101 S.E. 545; *Boney v. Parker*, 227 N.C. 350, 42 S.E. 2d 222; *Dwiggins v. Parkway Bus Co.*, 230 N.C. 234, 52 S.E. 2d 892.

"The counterclaim is substantially the allegation of a cause of

action on the part of the defendant against the plaintiff. . . ." *Bank v. Northcutt*, 169 N.C. 219, 85 S.E. 210.

In the absence of a showing that the rights of innocent third persons would be affected, the amendment filed to Woody's counterclaim in his answer by order of Judge Farthing relates back to the commencement of the action. *McDaniel v. Leggett*, 224 N.C. 806, 32 S.E. 2d 602; *Lee v. Hoff*, 221 N.C. 233, 19 S.E. 2d 858; *Lefler v. Lane*, 170 N.C. 181, 86 S.E. 1022.

Counsel have cited no case having similar facts, and after a search we have found none. Considering the provisions and purpose of G.S. 97-10, and its language, it seems that the necessary implication of G.S. 97-10 is the insurance carrier had the exclusive right within six months from the date of Woody's injury in the collision here to file the counterclaim of Woody in its name or in Woody's name, and Judge Farthing's order in that respect was correct. Defendants' assignments of error numbers 35 to 41 inclusive in respect to Judge Farthing's order as to the above counterclaim, and the charge of the court in respect thereto are overruled. G.S. 97-10 was repealed by Session Laws 1959, Chapter 1324, and §97-10.1, §97-10.2 and §97-10.3 substituted in lieu thereof. §2 of this Act provides that it "shall be in full force and effect from and after its ratification but shall not apply to any injury occurring before the ratification hereof." It was ratified on 20 June 1959.

We have carefully examined the other assignments of error to the charge. Reading the charge as a compositive whole (*Keener v. Beal*, 246 N.C. 247, 98 S.E. 2d 19), defendants have not shown prejudicial error as to them sufficient to justify a new trial. Error appears in the charge harmful to plaintiff and favorable to defendants. For instance, in charging on the issue as to plaintiff's contributory negligence the court charged the jury as to G.S. 20-153, and gave defendants' contentions in respect thereto, though defendants did not allege in their answers that plaintiff was guilty of contributory negligence by violating such statute.

This Court said in *Johnson v. Heath*, 240 N.C. 255, 81 S.E. 2d 657: "Technical error is not sufficient to disturb the verdict and judgment. The burden is on the appellant not only to show error, but to show prejudicial error amounting to the denial of some substantial right; or to phrase it differently, to show that if the error had not occurred, there is a reasonable probability the result of the trial might have been materially more favorable to him."

All of defendants' assignments of error have been considered, and all are overruled.

No error.