BRYAN BUILDERS SUPPLY, A CORPORATION, v. NORFLEET W. MIDYETTE AND WIFE, SHIRLEY K. MIDYETTE

No. 688

(Filed 23 August 1968)

**1. Contracts § 6— unlicensed contractor — action upon construction contract**

Upon plaintiff contractor's stipulation that it was not licensed to construct buildings at the alleged contract price, the court properly dismissed plaintiff's action for the balance due under the construction contract and properly retained the owner's counterclaim for breach of the contract and faulty work.

**2. Professions and Occupations; Constitutional Law § 12— purpose of statute requiring licensing of building contractors**

The purpose of Article 1 of Chapter 87 of the General Statutes, which prohibits any contractor who has not passed an examination and secured a license as therein provided from undertaking to construct a building costing $20,000 or more, is to protect the public from incompetent builders.

**3. Contracts § 6— unlicensed contractor — action for breach of contract — building exceeds statutory minimum cost**

When an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in G.S. 87-1, he may not recover for the owner's breach of the contract.

**4. Contracts § 12— operation of void contracts**

A void contract is no contract at all; it binds no one and is a mere nullity.

**5. Contracts § 6— construction contract — unlicensed contractor — action by innocent owner**

A construction contract entered into by a contractor in violation of G.S. 87-1 *et seq.* is not totally without effect, for the innocent owner may maintain an action for breach of the contract by the unlicensed contractor.

**6. Contracts §§ 25, 29— unlicensed contractor — breach of contract — action for damages or for recovery of advance payments**

Where an unlicensed contractor has not performed the construction work in accordance with its contract, the innocent owner may sue for damages resulting from a breach of the contract or, in the alternative, to recover payments made in advance for performance which was not rendered as promised.

**7. Contracts § 29— breach of contract — nominal damages**

In a suit for damages for breach of contract, proof of the breach would entitle plaintiff to nominal damages at least.

**8. Damages § 2; Quasi Contracts § 2— unjust enrichment — implied contract rules apply**

In a suit brought under the doctrine which prohibits unjust enrichment, the measure of recovery and the rules governing implied contracts apply.

**9. Damages § 2; Quasi Contracts § 2— breach of implied contract — nominal damages**

Implied contract is the basis for recovery on *quantum meruit;* proof of the breach of such contract entitles the plaintiff to nominal damages at least.

**10. Contracts §§ 27, 29; Quasi Contracts § 2— breach of contract — proof of damages — nominal damages**

In a counterclaim against an unlicensed contractor for breach of a construction contract, nonsuit is properly denied notwithstanding the owners' evidence of damages, both as to breach of contract and the value of the actual benefit received from the construction, is minimal, since the owners are entitled to recover nominal damages upon showing breach of contract or a failure of consideration in any amount.

**11. Appeal and Error § 31— broadside assignment of error to the charge**

Assignment of error that the court failed to explain and apply the law to the evidence as required by G.S. 1-180 will be rejected as broadside.

**12. Appeal and Error § 31— assignment of error on failure to charge**

An assignment based on failure to charge should set out the appellant's contention as to what the court should have charged.

**13. Contracts § 28— instructions on waiver of breach of construction contract**

In a counterclaim against an unlicensed contractor for breach of a construction contract, failure of the court to instruct the jury that the

owners had "accepted the house for occupancy in its defective condition" is not error where there is no evidence to support a charge that the owners had waived their right to object to the defects.

**14. Contracts § 28— construction contract by unlicensed contractor — action for breach of contract by innocent owners — instructions**

In a counterclaim against an unlicensed contractor for breach of a construction contract, an instruction that the contract between the parties was totally void and that neither could base a cause of action upon it is erroneous, since the owners, being members of the class for whose protection G.S. 87-1 *et seq.* were enacted and not being *in pari delicto* with the contractor, are entitled to maintain an action for breach of the contract.

**15. Appeal and Error §§ 25, 50— error in charge favorable to objecting party**

A party may not complain of error in the charge which is favorable to him.

**16. Appeal and Error § 4— theory of trial in lower court**

A litigant may not acquiesce in the trial of his case in the Superior Court on one theory and complain on appeal that it should have been tried upon another.

**17. Quasi Contracts § 2— construction contract by unlicensed contractor — quantum meruit recovery not allowed — offset against sums due from owner**

An unlicensed contractor who is not entitled to recover for the breach of a construction contract which he entered in violation of G.S. 87-1 *et seq.* may not recover the value of the work and services furnished under that contract on the theory of *quantum meruit* or unjust enrichment, but such contractor may offset, as a defense against damages due the owner, any sums which the owner otherwise owes him.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by Bryan Builders Supply, Inc., from *Clark, S.J.,* May 1967 Civil Session of BLADEN, docketed and argued at the Fall Term 1967 as Case No. 696.

As originally instituted, this action was a claim by a contractor against the owners for the balance allegedly due for construction of a house. The builder, Bryan Builders Supply, a corporation (Bryan), is therefore shown as the plaintiff in the caption and Norfleet W. Midyette and wife, Shirley K. Midyette (owners), are shown as the defendants. Subsequent events, as hereinafter detailed, changed the status of the parties.

On 27 March 1964, Bryan entered into a written contract with owners whereby, for the sum of $27,300.00, it agreed to construct a house on their property according to plans and specifications attached to the contract. Construction was begun during the latter part of March 1964 and owners moved into the house in November 1964.

They have paid Bryan $22,700.00 on the contract price. Of this sum, $20,000.00 was borrowed from Peoples Savings and Loan Association of Whiteville, which had approved a construction loan of $25,000.00. However, after the house was completed, it declined to lend more than $20,000.00.

On November 27th, Bryan filed a lien for $7,508.70 against the property. Of this sum $2,908.70 was listed for designated "extras." On 7 January 1965, Bryan instituted this action against owners to recover the sum of $7,508.70 and to foreclose the lien. Answering the complaint, owners alleged that, despite its representation to the contrary, Bryan was not a licensed contractor under G.S. 87-1 *et seq.;* that the house was not built according to the agreed plans and specifications; that, as specified, defective materials had been used and construction done in an unworkmanlike manner; that, when completed, the house was not worth over $20,000.00; and that owners were entitled to recover from Bryan the sum of $2,700.00 as an overpayment.

When the case was called for trial at the March 1966 Session, owners moved to dismiss Bryan's action for that it was not a contractor licensed under Chapter 87, Article 1, of the General Statutes of North Carolina. Upon Bryan's admission that at the time it entered into the contract it was not a licensed contractor, Judge McKinnon entered an order dismissing Bryan's action against owners and allowing them to amend their cross action and counterclaim. Bryan was granted leave to reply to owners' amended pleading.

On 25 March 1966, owners filed an "Amended Answer and Cross Action," the allegations of which are summarized as follows:

The parties entered into a contract whereby Bryan agreed to construct a home for owners in accordance with agreed plans and specifications for the sum of $27,300.00. Unknown to owners, Bryan was not licensed to construct houses costing more than $20,000.00. The house was not constructed according to the plans and specifications, and it was erected with certain described "improprieties, faults and negligent acts of construction." With little or no knowledge of these defects, owners paid Bryan $22,700.00 of the contract price when the house was not worth more than $15,000.00. To make the house safe for occupancy would require the expenditure of at least $9,818.00. Owners are, therefore, entitled to recover of defendant the difference between the amount of money paid to Bryan and the amount by which the house constructed by Bryan increased the value of the premises, that is, at least the sum of $7,700.00.

Answering, Bryan admitted the execution of the contract but de-

nied the allegations of poor workmanship and faulty materials. He admitted no deviations from the specifications except those requested or acquiesced in by owners. By way of counterclaim, Bryan alleged (1) that the cost of constructing the house in accordance with the original plans and specifications, and of making the changes requested by owners, was $33,141.07; and (2) that it is entitled to recover of owners, $9,690.71, that is, the difference between the amount by which the house had enhanced the value of the property ($33,141.07) and the amount actually paid by plaintiffs ($22,700.00), less the cost of merchandise returned ($750.36).

At the trial, owners offered plenary evidence tending to establish their allegations of defective construction, faulty materials, and deviations from the agreed specifications. Owners developed their case by offering evidence which tended to establish the breach of an express contract. Norfleet Midyette, one of the owners, testified that the defective workmanship and materials which Bryan had furnished could only be corrected by tearing down the house and starting all over again. Bryan's evidence tended to show that, although certain errors had occurred during construction, they had been corrected. Its evidence was marshaled to show that it had complied with its contract; that, except as to changes made with the consent of owners, the house had been built according to plans and specifications; and that, including $2,908.70 for "extras" furnished at owners' request, it had expended a total of $31,906.72 in constructing the house. Witnesses for both Bryan and owners testified fully and without objection with respect to the contract, the specifications, and the agreed price of the house.

At the conclusion of owners' evidence and again at the conclusion of all the evidence, Bryan's motion for nonsuit was denied (assignment of error No. 1).

The court, without any objection from the parties, submitted the following issues to the jury:

1. What amount, if any, of the sum of $22,700.00 paid by the owners to Bryan are the owners entitled to recover?

2. What sum of money, if any, in excess of the sum of $22,700.00 already paid by the owners to Bryan is Bryan entitled to recover of the owners? (Issues are set out verbatim except that the word *owners* has been substituted for *plaintiffs* and *Bryan* for *defendant*.)

With reference to the first issue, the court charged the jury that, because Bryan had no contractor's license as required by G.S. 87-1 *et seq.*, the contract between it and owners "was illegal and void and

unenforceable"; that therefore Bryan is not suing, nor are the owners, "for breach of contract. . . . So, the measure of damages is based not on the laws for the nonperformance of the contract by either one party or the other, but rather, on the basis of an implied contract, which is in law called quantum meruit and quantum meruit literally means 'what he deserves.' " (Assignments of error Nos. 3 and 4.)

With reference to the contract price of $27,300.00, the court instructed the jury that it was "not the measure of damages, since the contract is unenforceable, but this was admitted in evidence and is to be considered by you only as tending to show what the parties considered the work and materials would probably be worth if the contract had been performed and the house constructed in an ordinary workmanlike manner. This is only evidence, and not controlling on you on the question of value." (Assignment of Error No. 6.)

The court's final instruction with reference to the first issue was that the burden of proof was upon owners to satisfy the jury by the greater weight of the evidence what sum represented the reasonable value of the work performed and materials furnished by Bryan to owners; that if owners had satisfied the jury as to this amount, and it was less than $22,700.00, they would deduct this amount from $22,700.00, and the difference would be their answer to the issue; that unless owners satisfied the jury by the greater weight of the evidence that the reasonable value of the work and materials furnished by defendant was less than $22,700.00, the jury would answer the first issue "NONE." (Assignment of Error No. 7.)

As to the second issue, the court instructed the jury that they would not consider it if they answered the first issue "in some amount." However, if their answer to the first issue was "NONE," and if Bryan had satisfied the jury by the greater weight of the evidence that it had furnished to owners work and materials which had a reasonable value in excess of $22,700.00, their answer to the second issue would be the exact amount of the excess. (Assignment of Error No. 8.)

The jury answered the first issue $1,350.00. From the judgment decreeing that owners recover this amount and canceling the lien which Bryan had filed against owners' property, Bryan appealed.

*Williamson & Walton for Bryan Builders Supply, appellants.*
*No counsel for Norfleet W. Midyette and wife, appellees.*

SHARP, J.
The basic error in this case is that the evidence was developed

upon one theory, and the court submitted it to the jury upon another theory.

**[1]**    Upon Bryan's stipulation that at all times pertinent to this litigation it was not licensed to construct buildings "where the cost is $20,000.00 or more," Judge McKinnon correctly dismissed its action against owners for the balance due under the terms of the contract upon which it had sued. *McArver v. Gerukos,* 265 N.C. 413, 144 S.E. 2d 277; *Tillman v. Talbert,* 244 N.C. 270, 93 S.E. 2d 101; *Courtney v. Parker,* 173 N.C. 479, 92 S.E. 324. He correctly retained owners' counterclaim, which stated a cause of action against Bryan for breach of contract and faulty work.

**[2, 3]**    The purpose of Article 1 of Chapter 87 of the General Statutes, which prohibits any contractor who has not passed an examination and secured a license as therein provided from undertaking to construct a building costing $20,000.00 or more, is to protect the public from incompetent builders. When, in disregard of such a protective statute, an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract. This is true even though the statute does not expressly forbid such suits. 53 C.J.S. *Licenses* § 59 (1948); 33 Am. Jur. *Licenses* §§ 68-72 (1941); Annot., Failure of artisan or construction contractor to procure occupational or business license or permit as affecting validity or enforcement of contract. 82 A.L.R. 2d 1429 (1962); 5 Williston Contracts (Revised Edition 1937) § 1630; 6 Williston Contracts, *Ibid.* § 1766; 6A Corbin Contracts §§ 1510-1513.

**[4, 5]**    In denying an unlicensed contractor the right to recover upon his contract, the court sometimes terms such contracts "void," but this term is too broad to be used in this connection. "A void contract is no contract at all; it binds no one and is a mere nullity." 17 Am. Jur. 2d *Contracts* § 7 (1964). Contracts such as the one between owners and Bryan are not totally without legal effect, for the innocent party may maintain an action for damages for breach of a contract entered into between him and an unlicensed contractor. 33 Am. Jur. *Licenses* § 68 (1968 Cum. Supp. p. 80). See cases collected in Annot., 82 A.L.R. 2d 1429, § 3[b] and § 6[b].

In *Cohen v. Mayflower Corp.,* 196 Va. 1153, 86 S.E. 2d 860, the Supreme Court of Virginia affirmed a verdict and judgment of $21,000.00, which a landowner had recovered against an unlicensed contractor for breach of his contract. As the Court pointed out, there is nothing immoral or contrary to public policy in a construction contract involving $20,000.00 or more. The statute does not forbid such

contracts; it undertakes to protect from incompetent builders citizens who expend over and above that amount. The denial of recovery to an unlicensed contractor rests upon his conduct and not the nature of the transaction. Quoting from 6 Corbin Contracts § 1510, p. 962, the Court said: " 'It would be a rare or nonexistent case in which such an innocent person could not maintain some kind of action for a breach of the agreement by the guilty party who has wrongfully engaged in business. . . .'

"This view is based upon the principle that such innocent party is among the class of persons designed to be protected by such statutes, that he is not *in pari delicto* with the unlicensed party, and is therefore entitled to relief. Or, to state the matter another way, to deny relief to the innocent party in such cases would defeat the purpose of the statute and penalize the person intended to be protected thereby." *Id.* at 1162-1163, 86 S.E. 2d at 865. (The factual situation in *Cohen v. Mayflower Corp.* and in the instant case is to be distinguished from the one in which a plaintiff seeks to recover money paid for services on the sole ground that the person who had rendered them was unlicensed. See *Comet Theater Enterprises v. Cartwright,* 195 F. 2d 80, 30 A.L.R. 2d 1229; Annot., 30 A.L.R. 2d 1233.)

[6]    Owners in this case were clearly entitled to pursue the counterclaim for damages, which they had alleged against Bryan, and, if they established a breach of its contract with them, they were entitled to recover the damages resulting therefrom. *Robbins v. Trading Post, Inc.,* 251 N.C. 663, 111 S.E. 2d 884. In the alternative, owners could have sued to recover payments made in advance for performance which was not rendered as promised. *Golding v. Casstevens,* 255 N.C. 200, 120 S.E. 2d 436.

[7-10]    Notwithstanding the fact that owners' evidence with reference to their damages, both as to breach of contract and the value of the actual benefit received from Bryan's construction, was minimal, under no theory was Bryan entitled to a judgment of nonsuit. "In a suit for damages for breach of contract, proof of the breach would entitle the plaintiff to nominal damages at least." *Bowen v. Bank,* 209 N.C. 140, 144, 183 S.E. 266, 268. In a suit brought under the doctrine which prohibits unjust enrichment, the measure of recovery and the rules governing implied contracts apply. 22 Am. Jur. 2d *Damages* § 78 (1965). *Bowen v. Bank, supra.* "[I]mplied *assumpsit* (contract) is the basis for recovery on *quantum meruit;* and, if such contract was breached [by Bryan], plaintiffs [owners] were entitled at least to nominal damages." *Gales v. Smith,* 249 N.C. 263, 267, 106 S.E. 2d 164, 168. Upon owners showing a breach of con-

tract or a failure of consideration in any amount, they were entitled to recover nominal damages. Bryan's first assignment of error is overruled.

[11-13]   All other assignments which Bryan has brought forward relate to those portions of the charge which are set out in the statement of facts. Assignment of error No. 9, that the court failed to explain and apply the law to the evidence as required by G.S. 1-180, is broadside and will be rejected. *State v. Webster*, 218 N.C. 692, 12 S.E. 2d 272. An assignment based on failure to charge should set out the appellant's contention as to what the court should have charged. *State v. Malpass and State v. Tyler*, 266 N.C. 753, 147 S.E. 2d 180. Bryan has no such assignment. However, its contention that the court erred in not instructing the jury that owners had "accepted the house for occupancy in its defective condition" is totally without merit. The evidence would not support a charge that owners had waived their right to object to the defects.

[14, 15]   Owners might well have excepted to, and assigned as error the issues submitted and those portions of the charge which constitute Bryan's assignments of error 3, 4, and 7. Clearly, the judge erred when he charged the jury that the contract between the parties was totally void and that neither could base a cause of action upon it. Owners, being a member of the class for whose protection G.S. 87-1 *et seq.* were enacted, and not being *in pari delicto* with Bryan, were entitled to maintain an action for Bryan's breach of contract. Owners, however, have not appealed, and Bryan may not complain of error which is harmful to owners but not to it. *Ray v. Membership Corp.*, 252 N.C. 380, 113 S.E. 2d 806. An appellant "must show not only error, but that the alleged error was prejudicial to it. . . . A party cannot justly complain of an error in a charge favorable to him." (Citations omitted.) *Taylor Co. v. Highway Commission*, 250 N.C. 533, 539, 109 S.E. 2d 243, 247.

[16]   Our reading of the evidence in this case causes us to conclude that the theory upon which the judge submitted the case to the jury was favorable to Bryan. But be that as it may, Bryan did not except to the issues which determined the theory upon which the case was submitted to the jury. A litigant "may not acquiesce in the trial of his case in the Superior Court upon one theory and here complain that it should have been tried upon another." *Mills v. Dunk*, 263 N.C. 742, 746, 140 S.E. 2d 358, 362.

[17]   No error prejudicial to Bryan appears in the court's charge on the first issue. The jury's answer to it eliminated the second issue from the case. We deem it appropriate to say, however, that we find no error in the charge on the second issue which could have prejudiced

Bryan in the jury's consideration of the first issue. The same rule which prevents an unlicensed person from recovering damages for the breach of a construction contract has generally been held also to deny recovery where the cause of action is based on *quantum meruit* or unjust enrichment. Annot., 82 A.L.R. 2d 1429, § 3(c); 53 C.J.S. *Licenses* § 59b (1948). Bryan, therefore, was not entitled to the second issue. To deny an unlicensed person the right to recover damages for breach of the contract, which it was unlawful for him to make, but to allow him to recover the value of work and services furnished under that contract would defeat the legislative purpose of protecting the public from incompetent contractors. *Northen v. Elledge*, 72 Ariz. 166, 232 P. 2d 111. The importance of deterring unlicensed persons from engaging in the construction business outweighs any harshness between the parties and precludes consideration for unjust enrichment. *Lewis & Queen v. N. M. Ball Sons*, 48 Cal. 2d 141, 308 P. 2d 713.

A qualification of the rule that an unlicensed contractor may not maintain any action based on his construction contract was noted in *Culbertson v. Cizek*, 225 Cal. App. 2d 451, 37 Cal. Rptr. 548. That case held that the rule did not prevent the unlicensed person from *offsetting*, as a defense against damages due the owner, any sums which the owner otherwise owed him. This relaxation of the rule "permits the unlicensed contractor to assert his counter-demands defensively as it were, to the end of reducing in whole or in part the claims against him but without authorizing an affirmative judgment in the contractor's favor for an excess. . . . This result is consistent with the position taken by the courts that despite possible injustice resulting between the parties, they will not 'lend their assistance to a party who seeks compensation for an illegal act.' " *Id.* at 473-74, 37 Cal. Rptr. at 560-61.

The transcript of the evidence convinces us that no injustice resulted to appellant in the trial of this case. Indeed, Bryan seems to have profited greatly by owners' failure to offer more specific evidence tending to establish the exact amount of their monetary damage resulting from Bryan's breach of contract. We find no reason to impose upon owners, who are willing to abide by the verdict and who were not represented by counsel on this appeal, "the monstrous penalty of a new trial." *Freeman v. Ponder*, 234 N.C. 294, 308, 67 S.E. 2d 292, 302.

No error.

HUSKINS, J., took no part in the consideration or decision of this case.