VIRGEL PETTY AND WIFE, MARTHA P. PETTY, PLAINTIFFS v. J.D. OWEN D/B/A OWEN CONSTRUCTION CO., DEFENDANT

No. COA99-1139

(Filed 7 November 2000)

## 1. Construction Claims— residential construction contract— modular home—no general contractor license—bond requirements met

A defendant who met the $5,000 surety bond requirements under N.C.G.S. § 143-139.1 was not required to be a licensed general contractor under N.C.G.S. § 87-1 in order to enter into a residential construction contract with plaintiffs for the erection of a modular home, because: (1) N.C.G.S. § 87-1 and N.C.G.S. § 143-139.1 read together evidence an intent to exempt a general contractor who erects modular buildings from having a license if

the surety requirement is met; (2) the title of N.C.G.S. § 143-139.1 evidences a legislative intent to exempt general contractors from the licensing requirement so long as they meet the surety bond requirement; (3) the North Carolina Department of Insurance, charged with general supervision over the administration and enforcement of the building code, has determined that general contractors who erect modular buildings are exempt from the licensing requirement if they meet the bond requirements; (4) the legislature did not intend that everyone who engages in the erection of modular homes be licensed as a general contractor and be required to meet the bonding requirement of N.C.G.S. § 143-139.1; and (5) the two cases cited by plaintiffs in an attempt to make the contract unenforceable are inapplicable since the contractor in those cases constructed a conventional residence and not a modular home.

**2. Construction Claims— modular surety bonds—exemption from obtaining general contractor's license—additional activities within scope of bond**

Although plaintiffs rely on the Department of Insurance's 10 March 1998 memorandum on modular surety bonds to contend that defendant should not be exempt from the licensing requirement under N.C.G.S. § 87-1 regarding the erection of modular homes since he exceeded the $30,000 limit on additional construction activities, the additional activities including constructing a basement, attaching a garage, installing hardwood flooring, a HVAC system, and a septic tank all fall within the erection and installation of the modular home under N.C.G.S. § 143-139.1 and are thus within the scope of the surety bond posted with the county.

**3. Contracts— construction of modular home—additional options—lien waiver in exchange for second note—consideration**

The trial court properly granted summary judgment in favor of defendant on his claim on a second promissory note where plaintiffs contracted with defendant to construct a modular home, plaintiffs executed a second note for additional options they wanted to add that exceeded the original contract price, defendant executed a lien waiver in order to enable plaintiffs to obtain financing from their lender, and plaintiffs thereafter failed to make payments due on the note, because: (1) the agreement was supported by adequate consideration based on the fact that

plaintiffs received the lien waiver in exchange for the note, and it was irrelevant which documents were signed first; and (2) the execution of the second note and a deed of trust by plaintiffs in exchange for defendant's lien waiver was outside the scope of the existing residential construction contract and thus constituted a new agreement between the parties.

Appeal by plaintiffs from judgment entered 27 April 1999 by Judge Judson D. DeRamus and filed 29 April 1999 in Guilford County Superior Court. Heard in the Court of Appeals 16 August 2000.

*Richard I. Shope for plaintiffs-appellants.*

*Robinson & Lawing, L.L.P., by Robert J. Lawing and H. Brent Helms, for defendant-appellee.*

WALKER, Judge.

Plaintiffs entered into a residential construction contract (contract) with defendant on 11 February 1997, whereby defendant agreed to furnish labor and materials to erect a modular dwelling manufactured by Nationwide Homes, Incorporated (Nationwide), a licensed North Carolina general contractor. At the time, defendant was not a licensed general contractor in North Carolina. Under the original contract, plaintiffs were to pay defendant $183,642.00 less a down payment of $1,500. This amount included the base price of the home as well as numerous options. On 15 May 1997, plaintiffs executed a note and deed of trust in favor of defendant to cover the contract price. The note was to be paid in full by 15 July 1997, when plaintiffs were to obtain permanent financing at the completion of construction of their modular home. The contract price was later increased to $199,022.00 to allow for additional options in the home's construction. Because defendant was not a licensed general contractor, he posted a modular building set-up contractor license bond with Guilford County Planning and Development Department (County) on 3 April 1997.

Plaintiffs' home arrived from Nationwide in fully constructed sections, complete with all of the options they had selected, including the garage. For this reason, defendant's work was limited to pouring the home's foundation, assembling the sections, and overseeing the installation of the heating, air conditioning, plumbing and electrical work by sub-contractors. Defendant completed this work, and on 9 July 1997, the County issued a certificate of occupancy certifying

that the erection and construction fully complied with the North Carolina Building Code (Code) and other applicable ordinances.

As the time for closing on the loan approached, plaintiffs informed defendant that they were unable to obtain permanent financing for the entire amount owed under the contract, leaving a balance of $33,185.67 still owed to defendant. It was agreed by the parties that plaintiffs would execute a second note and deed of trust in favor of defendant for $33,185.67 and defendant would in turn execute a lien waiver.

Plaintiffs failed to make the payment due under the second note and deed of trust on 31 August 1997. After defendant filed a claim of lien and demanded payment, plaintiffs filed this action on 19 October 1998 seeking to have declared void the two notes and deeds of trust and defendant's claim of lien.

On 11 January 1999, defendant filed an answer and counterclaimed for $33,187.00 plus interest and attorney fees. Plaintiffs and defendant then filed motions for summary judgment, and on 27 April 1999, the trial court granted plaintiffs' motion for summary judgment as to their claim on the first note and deed of trust and denied plaintiffs' motion for summary judgment as to the second note and deed of trust and claim of lien. Defendant's motion for summary judgment was allowed as to the second note and deed of trust and claim of lien. Judgment was entered in defendant's favor in the amount of $44,489.26, which included interest and attorney fees.

On appeal, plaintiffs contend the trial court erred by denying their motion for summary judgment and in granting defendant's motion for summary judgment as to the second note and deed of trust and claim of lien. In support of their contention, plaintiffs argue they presented evidence that the residential construction contract was not enforceable because: (1) defendant was not a licensed general contractor as required by law; and (2) defendant signed a lien waiver after plaintiffs signed the second note and deed of trust, thereby relinquishing his right to collect under these instruments.

At the outset, we note that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999); *See also Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 337

S.E.2d 644 (1985), *disc. review allowed*, 315 N.C. 589, 341 S.E.2d 28 (1986).

**[1]** We first address whether defendant was required to be a licensed general contractor in order to enter into a residential construction contract calling for the erection of a modular home.

> It is well settled in North Carolina that a general contractor within the meaning of G.S. 87-1 who has no license may not recover for the owner's breach of the contract, or for the value of the work and services furnished or materials supplied under the contract on the theory of unjust enrichment.

*Harrell v. Clarke*, 72 N.C. App. 516, 517, 325 S.E.2d 33, 34 (1985), *citing Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E.2d 507 (1968). However, defendant contends that because he complied with the requirement of posting a surety bond with the County, the contract is enforceable. Defendant further asserts that the legislature carved out an exception to the general contractor license requirement of N.C. Gen. Stat. § 87-1 when it adopted the following statutory language in N.C. Gen. Stat. § 143-139.1:

> The Building Code Council may also adopt rules to insure that any person that is not licensed, in accordance with G.S. 87-1, and that undertakes to erect a North Carolina labeled manufactured modular building, meets the manufacturer's installation instructions and applicable provisions of the State Building Code. Any such person, before securing a permit to erect a modular building, shall provide the code enforcement official proof that he has in force for each modular building to be erected a $5,000 surety bond insuring compliance with the regulations of the State Building Code governing installation of modular buildings.

N.C. Gen. Stat. §§ 87.1, 143-139.1 (1999); Act of July 15, 1989, Ch. 653, 1989 N.C. Sess. Laws 1810 (providing that persons who erect manufactured modular structures either have a valid contractor's license or comply with the rules of the Building Code Council).

Plaintiffs contend that while the plain language of this provision requires contractors to post a $5,000 surety bond, it does not provide an exception to the license requirement for general contractors who erect modular homes. Plaintiffs further argue that a literal interpretation of this statute merely grants the Building Code Council (Council) the authority to adopt rules for the purpose of insuring compliance with manufacturer's instructions and the Code.

Since our analysis invokes interpretation of two separate statutes, we are compelled to discern the legislative intent. *In re Banks*, 295 N.C. 236, 244 S.E.2d 386 (1978). An intent analysis is also warranted by the fact that N.C. Gen. Stat. § 143-139.1 and § 87-1 are *in pari materia* since they relate to the same subject and have a common purpose. *Taylor v. City of Lenoir*, 129 N.C. App. 174, 497 S.E.2d 715 (1998). "Such statutes should be reconciled with each other when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent." *Comr. of Insurance v. Automobile Rate Office*, 287 N.C. 192, 202, 214 S.E.2d 98, 104 (1975) (*citations omitted*).

Our Supreme Court has held that "[t]he will of the legislature 'must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied.'" *State v. Oliver*, 343 N.C. 202, 212, 470 S.E.2d 16, 22 (1996), *citing Milk Commission v. Food Stores*, 270 N.C. 323, 332, 154 S.E.2d 548, 555 (1967). Moreover, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Mazda Motors v. Southwestern Motors*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (citations omitted). "The courts will control the language to give effect to the legislative intent." *Variety Theatres v. Cleveland* County, 15 N.C. App. 512, 514, 190 S.E.2d 227, 228, *affirmed*, 282 N.C. 272, 192 S.E.2d 290 (1972), and *appeal dismissed*, 411 U.S. 911 (1973), *quoting Ikerd v. R. R.*, 209 N.C. 270, 183 S.E.2d 402 (1936).

In this regard, we note that at the time N.C. Gen. Stat. § 143-139.1 was amended, portions of § 87-1 were also amended under the same legislation. N.C. Gen. Stat. §§ 87-1, 143-139.1. N.C. Gen. Stat. § 87-1 was rewritten to include within its definition of a general contractor "any person, firm or corporation that is not licensed as a general contractor . . . [who] undertakes to erect a North Carolina labeled manufactured modular building meeting the North Carolina State Building Code," or one who undertakes construction costing $45,000 or more. N.C. Gen. Stat. § 87-1; Ch. 653, 1989 N.C. Sess. Laws at 1811. On the other hand, N.C. Gen. Stat. § 143-139.1 provides that an unlicensed general contractor may erect a modular building upon posting the required surety bond. N.C. Gen. Stat. §§ 87-1, 143-139.1; Ch. 653, 1989 N.C. Sess. Laws at 1810-1812. It is thus clear that these two statutes, when read together, evidence an intent to exempt a general contrac-

tor who erects modular buildings from having a license if the surety bond requirement is met.

In addition, "[w]hen the meaning of a statute is in doubt, reference may be made to the title and context of an act to determine the legislative purpose." *Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 782 (1981) (citations omitted). "However, the title does not control the text when it is clear." *Blowing Rock v. Gregorie*, 243 N.C. 364, 90 S.E.2d 898 (1956). This is because "[t]he title is part of the bill when introduced, being placed there by its author, and probably attracts more attention than any other part of the proposed law, and if it passes into law the title thereof is consequently a legislative declaration of the tenor and object of the Act . . . . Consequently, when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered." *Sykes v. Clayton, Comr. of Revenue*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968).

The title of the subject amendment to N.C. Gen. Stat. § 143-139.1 reads: "AN ACT TO PROVIDE THAT PERSONS WHO ERECT MANUFACTURED MODULAR STRUCTURES EITHER HAVE A VALID CONTRACTORS' LICENSE OR COMPLY WITH RULES OF THE BUILDING CODE COUNCIL." Ch. 653, 1989 N.C. Sess. Laws at 1810-1811. Thus, the title also evidences a legislative intent to exempt general contractors from the licensing requirement so long as they meet the surety bond requirement.

Moreover, "[a]n administrative interpretation of a statute, acquiesced in over a long period of time, is properly considered in the construction of the statute by the courts." *Duggins v. Board of Examiners*, 25 N.C. App. 131, 137, 212 S.E.2d 657, 662, *cert. allowed*, 287 N.C. 258, 214 S.E.2d 430 (1975), and *affirmed*, 294 N.C. 120, 240 S.E.2d 406 (1978). "But an administrative interpretation can never be considered when in direct conflict with the intent and purpose of the act, or when in conflict with the interpretation of the courts." *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 164 S.E.2d 289 (1968).

The North Carolina Department of Insurance (Department of Insurance) is charged with general supervision over the administration and enforcement of the Code. The Department of Insurance has determined, as evidenced in memorandums dated 16 March 1990 and 10 March 1998, that general contractors who erect modular buildings are exempt from the licensing requirement if they meet the bond

requirements. This interpretation by the Department of Insurance is also in accord with the Code, which now provides:

> In accordance with General Statutes G.S. 87-1 and G.S. 143-139.1 any person, firm or corporation that undertakes to erect a modular building must have either a valid North Carolina General Contractors License or provide a $5,000 surety bond for each modular building to be erected.

VIII N.C. State Bldg. Code § 206.4 (1994). Under the authority granted by the legislature, the Council adopted the Code for the purpose of ensuring safe buildings by regulating their construction. N.C. Gen. Stat. § 143-138 (1999); *In re Appeal of Medical Center*, 91 N.C. App. 107, 370 S.E.2d 597 (1988); *State v. Walker*, 265 N.C. 482, 144 S.E.2d 419 (1965).

Furthermore, we are convinced the legislature did not intend that everyone who engages in the erection of modular homes be licensed as a general contractor <u>and</u> be required to meet the bonding requirement of N.C. Gen. Stat. § 143-139.1.

Plaintiffs further contend that under the rule of *Brady v. Fulghum*, 309 N.C. 580, 308 S.E.2d 327 (1983), *superseded on other grounds as stated in Hall v. Simmons*, 329 N.C. 779, 407 S.E.2d 816 (1991), and *Harrell*, 72 N.C. App. 516, 325 S.E.2d 33, the contract between the parties is unenforceable. However, our review of these cases reveals that they are not applicable to the issue in this case. In *Brady*, our Supreme Court held that "[g]enerally, contracts entered into by unlicensed construction contractors, in violation of a statute passed for the protection of the public, are unenforceable by the contractor." *Brady*, 309 N.C. at 583, 308 S.E.2d at 330 (citation omitted). However, the present case is distinguishable because the contractor constructed a conventional residence and not a modular home. *Harrell* is likewise distinguishable for the same reason. *Harrell*, 72 N.C. App. 516, 326 S.E.2d 33.

In sum, based on our interpretations of N.C. Gen. Stat. §§ 87-1 and 143-139.1, the public will be protected since modular buildings must be constructed according to the Code. For the reasons set forth above, we hold that a person or entity who undertakes to erect a modular home need not be licensed if he meets the surety bond requirements.

**[2]** Plaintiffs also argue that if N.C. Gen. Stat. § 143-139.1 is found by this Court to be an exception to the licensing requirement regarding

the erection of modular homes, it does not apply in the instant case. In so doing, plaintiffs rely on the following statements made by the Department of Insurance while addressing modular surety bonds in a memorandum dated 10 March 1998:

> N.C.G.S. § 143-139.1 only applies to the set-up and installation of the modular unit itself. The only permissible building activity, other than the construction of the foundation for the modular unit, is the setting and field connections of the labeled manufactured modular unit. N.C.G.S. § 143-139.1 does not apply to additional activities . . . . If the cost of these additional construction activities meets or exceeds the thirty thousand dollar ($30,000) limit established by N.C.G.S. § 87-1, then a general contractor's license will be required. In any case, these activities are not included in the scope of the modular surety bond.

Plaintiffs therefore contend that defendant exceeded this $30,000 limit because of the additional activities such as constructing a basement, attaching a garage, installing hardwood flooring, a HVAC system, and a septic system. While the record indicates that plaintiffs' modular home arrived from Nationwide in fully constructed sections and complete with all of the options that plaintiffs had ordered, the record is unclear as to the extent of defendant's activities in these areas. However, even assuming the above activities were the defendant's responsibility, we conclude that these activities fall within the erection and installation of the modular home and are thus within the scope of the surety bond posted with the County.

[3] We last address whether summary judgment was proper as to the lien waiver. As defendant points out, this issue is similar to that in *Construction Co. v. Coan*, 30 N.C. App. 731, 228 S.E.2d 497, *disc. review denied*, 291 N.C. 323, 230 S.E.2d 676 (1976) where defendants contracted with plaintiff to construct a motel. When the completion date approached, the extras that defendants wanted exceeded the original contract price. *Id.* at 732, 228 S.E.2d 498. The parties agreed upon a final amount for which defendants executed two notes. *Id.* In return and as part of the agreement, plaintiff executed a lien waiver "acknowledging payment in full and waiving any lien rights in the project[,]" in order to enable defendants to obtain financing from their lender. *Id.* After defendants failed to make payments due on the notes, plaintiff filed suit and moved for summary judgment which was granted. *Id.* This Court upheld the trial court's entry of summary judgment because the evidence was "clearly sufficient to show an

accord and satisfaction." *Id.* at 738, 228 S.E.2d 502. This Court held that the trial court correctly found that the agreement was supported by adequate consideration because "defendants received the [lien waiver] in return for the notes. By that instrument, plaintiff admitted being fully paid on the underlying obligation and also waived its rights to file and perfect mechanic's and materialmen's liens . . . . That the lien waiver constituted value to the defendants is evidenced by their admission of using [it] to obtain permanent financing." *Id.* at 739-40, 228 S.E.2d 502-03.

Plaintiffs attempt to distinguish the case at hand from *Coan* on the basis that the second note and deed of trust in this case were signed before the lien waiver and therefore were not signed in consideration of it. *Id.* However, in both cases, the parties reached an agreement whereby one party would execute a note and deed of trust, and in return, the other party would execute a lien waiver. *Id.* It is irrelevant which documents were signed first.

Plaintiffs further assert that *Coan* has no bearing on this case because the lack of a disputed amount makes accord and satisfaction inapplicable. However, this Court in *Coan* also affirmed the trial court's finding that "[t]he making and delivery of the two notes which are the subject matter of this action by defendants was outside the scope of the contract between plaintiff and defendants for the construction of the [motel], since such contract did not provide for or require the defendants to make and deliver such notes." *Id.* at 734, 228 S.E.2d 499. We agree that accord and satisfaction is not applicable because there is no dispute as to the amount plaintiffs owed to defendant. However, as in *Coan*, the execution of the second note and deed of trust by the plaintiffs in exchange for defendant's lien waiver was outside the scope of the existing residential construction contract and thus constituted a new agreement between the parties. *Id.*

For the foregoing reasons, we conclude that summary judgment was properly granted on behalf of defendant and properly denied on plaintiffs' claims.

Affirmed.

Judges LEWIS and HUNTER concur.