AR-CON CONSTRUCTION COMPANY v. NEIL ANDERSON and Wife, Mrs. NEIL ANDERSON

No. 6918SC173

(Filed 18 June 1969)

1. Contracts § 6— applicability of statute requiring contractor to have license

The applicability of the general contractors licensing statute, G.S. Ch. 87, Art. 1, is determined by the cost of the undertaking and not by the amount of any separate progress payment required by the contract.

2. Contracts § 6— unlicensed contractor — action for breach of contract or quantum meruit

When an unlicensed person contracts with an owner to erect a building

costing more than the minimum sum specified in G.S. 87-1, he may not recover for the owner's breach of the contract, nor may he recover the value of the work and services furnished under the contract on the theory of *quantum meruit* or unjust enrichment.

**3. Contracts § 6— action for breach of contract — contractor unlicensed when contract entered**

In an action by a general contractor to recover an amount allegedly due for construction of a house costing more than $20,000, the trial court properly allowed plaintiff's plea in bar where it was stipulated that the contractor had previously held a valid general contractor's license but that the license had expired prior to the time the contract sued upon was entered and was not thereafter renewed, the fact that plaintiff contractor had at one time held a valid license but failed to pay the renewal fee required by G.S. 87-10 not amounting to a "substantial compliance" with the licensing requirements of G.S. Ch. 87, Art. 1, since the renewal fee is not merely for revenue purposes but bears a substantial relationship to the accomplishment of the purposes of the statute, and the annual renewal is an important, not merely perfunctory, requirement necessary to accomplish the protective public purpose of the statute.

**4. Professions and Occupations; Administrative Law § 4— revocation of license — procedures — failure to pay statutory renewal fee**

Provisions of G.S. Ch. 150 setting forth uniform procedures to be followed in the revocation of licenses do not apply where renewal of a license is withheld for failure to pay a statutory renewal fee. G.S. 150-10(3).

**5. Pleadings § 15; Trial § 49— motion for new hearing on plea in bar — newly discovered evidence**

The trial court did not err in the denial of plaintiff's motion for a rehearing on defendant's plea in bar on the ground of newly discovered evidence where there was no showing that plaintiff did not have full knowledge of the facts referred to in its motion at the time of the hearing on the plea in bar, there was no showing as to why, in the exercise of due diligence, plaintiff failed to present evidence concerning such facts at the hearing, and it is not clearly apparent that a different result would be reached upon a new hearing.

**6. Professions and Occupations; Contracts § 6— knowledge by customer that contractor is unlicensed**

The general contractors licensing statute does not authorize a person with whom an unlicensed contractor deals to waive the requirements of the statute, nor does it grant the unlicensed contractor immunity merely because he advises the customer that he is acting in violation of the statute.

APPEAL by plaintiff from *Martin, Robert M., J.,* 4 November 1968 Civil Session of GUILFORD Superior Court (High Point Division).

This is a civil action in which plaintiff, a North Carolina corporation, seeks to recover from defendants an amount allegedly due by

reason of materials and labor furnished by plaintiff in constructing a house for defendants. Plaintiff in its complaint alleged: That on 12 October 1967 the parties entered into a contract whereby plaintiff agreed to build a home for defendants on a tract of land owned by them in Guilford County, N. C., for which defendants agreed to pay plaintiff the sum of $27,800.00, payable $8,000.00 when the home should be 35% completed, $8,000.00 when the home should be 70% completed, and the balance when the home should be fully completed; that pursuant to said contract the plaintiff began construction on 21 November 1967 and continued construction until 26 April 1968; that plaintiff completed approximately 60% of the house and demanded payment from defendants as required by the contract, but defendants refused to pay. Plaintiff further alleged that between 21 November 1967 and 26 April 1968 it had furnished materials, labor and services in construction of said home reasonably worth $16,052.07 and that same has been demanded of defendants but defendants have refused to pay. Plaintiff prayed for judgment against defendants in the sum of $16,052.07.

Defendants answered, admitting entering into a contract with plaintiff whereby plaintiff had agreed to build a home for defendants on defendants' land, but denied the remaining allegations of the complaint as alleged therein. In a first further answer, defendants alleged that the parties had contracted that plaintiff would construct a home for defendants according to agreed plans for a price of $22,000.00; that subsequently certain changes and additions had been agreed upon, for a total agreed increase over the original contract price in the amount of $3,332.43; that plaintiff on 1 April 1968 had submitted a statement to defendants demanding that defendants agree to an increase of $10,623.05 rather than $3,332.43; that defendants refused to agree to the increase demanded by plaintiff, and plaintiff had abandoned construction of the house; that defendants were at all times and were still willing to allow plaintiff to complete said construction for the total agreed consideration of $25,332.43, but that plaintiff had refused to proceed. As a second further answer, defendants alleged that plaintiff, by its failure to perform its obligations under the contract within a reasonable time, had materially breached said contract and was thereby precluded from maintaining its action. As a third further answer defendants alleged that plaintiff had breached the contract in failing to furnish certain materials of the type which had been agreed upon, by reason of which defendants alleged they were entitled to a setoff.

As a fourth defense and as a plea in bar, defendants alleged that at the time the contract sued upon was entered into and at all times

during construction of the house, plaintiff did not hold a general contractor's occupational license as required by G.S., Chap. 87.

The parties agreed that the court might hear and determine the plea in bar raised by defendants' fourth further answer in advance of trial on the merits. At this hearing the parties stipulated that on 6 October 1966 plaintiff was licensed as a general contractor pursuant to G.S., Chap. 87, with a classification of "Building Contractor" and limitation of "Limited;" that said license, however, expired on 31 January 1967 and at all times since 31 January 1967 plaintiff possessed no valid building contractor's license, and said license previously granted was not renewed after its expiration. The trial court entered an order making findings of fact in conformity with these stipulations and the allegations in the complaint, including a finding that plaintiff was engaged in the business of general contracting in the State of North Carolina and that the contract between the parties comes within the definition of "general contracting" as set forth in G.S., Chap. 87. Based on these findings the court sustained defendants' plea in bar and dismissed plaintiff's action. Following entry of this order, and during the same session of superior court at which it was entered, plaintiff filed a motion for a rehearing on the plea in bar on the grounds of newly discovered evidence, which motion was denied. To the entry of the order sustaining defendants' plea in bar and dismissing plaintiff's action, and to entry of the order denying plaintiff's motion for rehearing, plaintiff appealed.

*Morgan, Byerly, Post & Keziah, by Edward N. Post, for plaintiff appellant.*

*Schoch, Schoch & Schoch, by Arch K. Schoch, Jr., for defendant appellees.*

PARKER, J.

[1]    In entering into and undertaking to perform the contract alleged in the complaint, plaintiff was clearly subject to the provisions of G.S., Chap. 87, Art. 1. For purposes of that Article, G.S. 87-1 defines a general contractor as "one who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct any building, . . . or any improvement or structure *where the cost of the undertaking is twenty thousand dollars ($20,000.00) or more* and anyone who shall bid upon or engage in constructing any undertakings or improvements above mentioned in the State of North Carolina costing twenty thousand dollars ($20,000.00) or more shall be deemed and held to have engaged in the business of general contracting in

the State of North Carolina." (Emphasis added.) Thus it is the "cost of the undertaking," which in this case plaintiff alleged in its complaint was to be $27,800.00, and not the amount of any separate progress payment, which determines applicability of the Article.

[2]   In *Builders Supply v. Midyette,* 274 N.C. 264, 162 S.E. 2d 507, the North Carolina Supreme Court, in an opinion by Sharp, J., held:

> "The purpose of Article 1 of Chapter 87 of the General Statutes, which prohibits any contractor who has not passed an examination and secured a license as therein provided from undertaking to construct a building costing $20,000.00 or more, is to protect the public from incompetent builders. When, in disregard of such a protective statute, an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract. This is true even though the statute does not expressly forbid such suits."

That case, as the present one, concerned a suit brought by a contractor against the owners to recover the balance allegedly due for construction of a house costing more than $20,000.00. The Supreme Court held that upon the contractor's admission that at the time it entered into the contract it was not a licensed contractor, the trial court had correctly dismissed the contractor's action against the owners for the balance due under the terms of . the contract upon which it had sued. Furthermore, the Court held that the unlicensed contractor was also barred from maintaining an action based on any theory of *quantum meruit* or unjust enrichment, in that connection saying:

> "The same rule which prevents an unlicensed person from recovering damages for the breach of a construction contract has generally been held also to deny recovery where the cause of action is based on *quantum meruit* or unjust enrichment. Annot., 82 A.L.R. 2d 1429, § 3(c); 53 C.J.S. *Licenses* § 59b (1948). . . . To deny any unlicensed person the right to recover damages for breach of the contract, which it was unlawful for him to make, but to allow him to recover the value of work and services furnished under that contract would defeat the legislative purpose of protecting the public from incompetent contractors. *Northen v. Elledge,* 72 Ariz. 166, 232 P. 2d 111. The importance of deterring unlicensed persons from engaging in the construction business outweighs any harshness between the parties and precludes consideration for unjust enrichment.

*Lewis & Queen v. N. M. Ball & Sons,* 48 Cal. 2d 141, 308 P. 2d 713."

In the present case the parties have stipulated that on 6 October 1966, approximately one year prior to making the contract here sued upon, plaintiff was licensed as a general contractor pursuant to G.S. Chap. 87, Art. 1, with a classification of "General Contractor" and limitation of "Limited." This license would have authorized the holder thereof to engage in the practice of general contracting in North Carolina, with the limitation that the holder should not be entitled to engage therein with respect to any single project of a value in excess of $75,000.00. G.S. 87-10. Thus plaintiff's license, so long as it remained valid, would have authorized it to undertake construction projects such as the one which is the subject of this litigation. The parties stipulated, and based on such stipulation the court found as a fact, that plaintiff's license had expired on 31 January 1967 and was not thereafter renewed. The contract here sued upon was entered into on 12 October 1967 and plaintiff undertook to perform it during the period 21 November 1967 until 26 April 1968. Therefore neither at the time the contract was entered into nor at any time thereafter pertinent to this litigation did plaintiff have a valid contractor's license.

G.S. 87-10 provides in part that "(c)ertificate of license shall expire on the 1st day of December following the issuance or renewal *and shall become invalid* on that day unless renewed, subject to the approval of the Board. Renewals may be effected any time during the month of January without reexamination, by payment of a fee to the Secretary of the Board of $60.00 for unlimited license, $40.00 for intermediate license and $20.00 for limited license." (Emphasis added.) It is not clear on what basis the parties stipulated that plaintiff's license had expired on 31 January when the statute expressly provides such licenses shall expire on the 1st day of December, but the discrepancy is immaterial insofar as it affects any question presented by this appeal, since in any event there is no dispute between the parties that plaintiff's license had expired prior to its entering into the contract with defendants and had not been thereafter renewed at any time while plaintiff was undertaking performance of said contract.

[3] Plaintiff contends that, having at one time held a valid contractor's license, presumably issued to it only after examination by the North Carolina State Licensing Board for Contractors as required by G.S. 87-10, it should be held to have "substantially complied" with the requirements of G.S., Chap. 87, Art. 1, and that the

purpose of protecting the public from incompetent builders would not be served by applying the rule of *Builders Supply v. Midyette, supra,* to the facts of this case. Plaintiff cites *Latipac Inc. v. Superior Court of Marin County,* 49 Cal. Rptr. 676, 411 P. 2d 564, as supporting this contention. In that case, as in the present one, the contractor had previously possessed a valid contractor's license. However, because of its failure to submit a renewal application and the $30.00 renewal fee, the license in that case had expired *after the contract had been entered into* and during the period in which the contractor was engaged in performing under the contract. In that case the license was valid and in effect at the time the parties executed their contract and remained in effect for fifteen months thereafter. The contract required 25 months for full performance, and it was only during the last ten months of that period that the contractor was engaged in performance after its license had expired. Under those circumstances a majority of the California Supreme Court found the case to be one in which the protective policy of the licensing statute had been effectively realized and permitted the contractor to maintain its suit to recover from the owner the balance allegedly due under the contract. A reading of the majority opinion in that case reveals that the California Supreme Court laid primary stress upon the fact, present in that case but not in the one now before us, that the contractor did have a valid license *at the time of entering into the contract.* In this connection the Court said:

> "Plaintiff possessed a valid license at the time its existence was crucial to the decisions of the other contracting party and to the prospective subcontractors and other creditors who might extend credit in reliance upon the validity of that contract. The key moment of time when the existence of the license becomes determinative is the time when the other party to the agreement must decide whether the contractor possesses the requisite responsibility and competence and whether he should, in the first instance, enter into the relationship. The license, as an official confirmation of the contractor's responsibility and experience, then plays its important role. Then, too, it serves as a basic determinant in the decision of prospective subcontractors and other creditors as to whether to extend credit to the contractor on the strength of the contract. At the date of the execution of the instant contract plaintiff held an unquestionably valid contractor's license. Indeed, plaintiff had possessed such a license ever since 1957; plaintiff held that license for seventeen months *after* the date of the execution of the contract.

"In determining whether or not a contractor has 'substantially complied' with the statute and whether such substantial compliance has afforded the other party the effective protection of the statute, the courts have accorded great weight to the significant moment of the entrance of the parties into the relationship. The contractor who holds a valid license at the time of contracting executes a contract valid at its inception both as between the parties and as to third parties who might rely upon it.

*            *            *

"As a corollary, the *absence* of a license at the time of contracting has figured prominently in decisions in which our courts have denied recovery for want of substantial compliance."

Since the contractor in the case presently before us did not have a valid license at the time of entering into the contract here sued upon, the *Latipac* case does not support its contention that it had "substantially complied" with the licensing statute.

In further support of its contention of substantial compliance, plaintiff contends that even though in January 1967 it had failed to pay the annual renewal fee required by G.S. 87-10, it should nevertheless be considered as still licensed and that the annual fee was merely for revenue purposes and not to protect the general public. This contention, however, cannot be made consistent with the express language of the statute, which provides that the license *"shall expire* on the 1st day of December following the issuance or renewal and *shall become invalid* on that date unless renewed, *subject to the approval of the Board."* Furthermore, the annual renewal fees required by G.S. 87-10 are in no way related to the license taxes required to be paid by contractors by the North Carolina Revenue Act. G.S. 105-54. The renewal fees required by G.S. 87-10 are not part of the State's revenues, but provide the funds by which the North Carolina State Licensing Board for Contractors is enabled to carry out the public purposes for which it was created. Therefore the payment of these fees does bear a direct and substantial relationship to the accomplishment of the public purposes of the statute. Also, by the express language of that section the license is to be renewed annually only "subject to the approval of the Board," and by clear implication of the language of the statute the Board may require reexamination of any contractor who shall have failed to make timely payment of the annual renewal fee. It should also be observed that G.S. 87-13 makes it a misdemeanor to use an expired license, just as it is a misdemeanor to operate in violation of the statute

without ever having procured a valid license in the first instance. In addition, one of the obvious purposes of requiring annual renewal of licenses is to enable the licensing Board to maintain and publish the roster of currently licensed contractors as required by G.S. 87-8. All of these statutory provisions, when considered together, indicate a clear legislative intent that annual license renewal should be considered an important, and not merely a perfunctory, requirement in order to accomplish the protective public purpose of the statute. Plaintiff cannot be said to have substantially complied with the statute when it ignored this requirement.

[4]   Appellant further contends that the order dismissing its action was deficient in that it contained no finding that the requirements of G.S., Chap. 150 had been complied with. That Chapter provides for uniform procedures to be followed in connection with revocation of licenses. It expressly does not apply where renewal of a license is withheld for failure to pay a statutory renewal fee. G.S. 150-10(3).

[5, 6]   Finally, appellant contends there was error in the trial court's refusal to grant its motion for a rehearing on the plea in bar. The stated purpose of the motion for rehearing was to permit plaintiff to present evidence to the effect that prior to and at the time the contract had been entered into the male defendant had been informed that plaintiff's license had already expired. Treating this motion in the same manner as a motion for a new trial upon the ground of newly discovered evidence, it is apparent that the requirements for favorable consideration of such a motion have not been met. *Johnson v. R. R.*, 163 N.C. 431, 79 S.E. 690; 2 McIntosh, N. C. Practice 2d, § 1596(8). There was no showing that appellant did not have full knowledge of the facts referred to in its motion at the time of the hearing on the plea in bar, and no showing as to why, in the exercise of due diligence, appellant had failed to present evidence concerning such facts at the time of that hearing. In addition, though we do not find it necessary so to decide, it is not clearly apparent that upon a new hearing a different result would be reached; nothing in the licensing statute authorizes a person with whom an unlicensed contractor deals to waive the requirements of the statute or grants the unlicensed contractor immunity merely because he advises one of his customers that he is acting in violation of the statute. Other persons, including prospective subcontractors and suppliers of building materials, also have an interest to be protected. In any event,

granting of such a motion is within the discretion of the trial court, and there has been no showing of abuse of discretion in this case.

The orders appealed from are

Affirmed.

MALLARD, C.J., concurs.

BRITT, J., dissents.