RUTH M. HOLLAND v. SAM C. WALDEN (ALSO KNOWN AS SAMUEL C. WALDEN) AND WIFE, DIANNA S. WALDEN

No. 7126SC39

(Filed 26 May 1971)

1. Contracts § 6— what constitutes a general contractor

A person who contracted and undertook to construct a house for others at an agreed price of $67,500 became a "general contractor" and was subject to the licensing provisions of G.S. 87-10. G.S. 87-1.

2. Contracts § 6— contractor entitled to maintain action for purchase price

A person who was a licensed contractor for eighteen and one-half months out of the twenty-one months during which she constructed a house for the defendants is entitled to maintain an action against the defendants for the balance of the contract price.

3. Contracts § 6— purpose of contractor's licensing statute

The purpose of the contractor's licensing statute is to protect the public from incompetent builders.

APPEAL by plaintiff from *Martin (Harry C.), Judge,* 31 August 1970 Civil Non-Jury Session of Superior Court held in MECKLENBURG County.

Plaintiff appeals from a summary judgment sustaining defendants' plea in bar and dismissing her action. In this action plaintiff seeks to recover $12,008.79 which she alleges defendants owe her as the unpaid balance on an express contract under which plaintiff built a house for defendants. Defendants admit the contract, but deny they owe plaintiff anything under it. As a plea in bar they allege that when the contract was entered into and for some time thereafter while plaintiff was performing work under it, she was not licensed as a general contractor as required by the General Statutes of North Carolina. As a counterclaim defendants allege that plaintiff failed to follow the plans and specifications in building the house and that some of the work was defective.

Both parties moved for summary judgment in their favor on the issue raised by defendants' plea in bar, supporting their motions by affidavits and by defendants' answers to plaintiff's interrogatories. Upon considering these and uncontroverted portions of the verified pleadings, the trial judge was of opinion that there was no genuine issue as to any material fact bearing upon defendants' plea in bar and entered an order making find-

ings of fact, which are summarized (except where quoted) as follows:

### FINDINGS OF FACT

On or about 15 March 1967 plaintiff and defendants entered into a contract pursuant to which plaintiff, as general contractor, agreed to build a house for defendants upon land owned by them in Mecklenburg County. In this contract plaintiff undertook to build a complete home for defendants at a lump sum price of $67,500.00 to be paid by defendants. All extras, changes and modifications were made through plaintiff, and defendants had no contractual arrangements with and did not select the laborers, subcontractors and materialmen. Construction commenced shortly after 5 May 1967, and by 12 July 1967 the footings and foundations were complete and framing was underway. Prior to 12 July 1967 plaintiff had never been granted any license by the North Carolina Licensing Board for Contractors. On 12 July 1967 that Board granted her a limited building contractor's license (G.S. 87-10) permitting her to engage in general contracting on projects having a value of no more than $75,000.00. This limited license remained in effect and was the only one granted to plaintiff until 5 February 1970, when she was granted an intermediate license. While there were delays in construction from time to time and disagreements between the parties with respect to same, plaintiff did work on defendants' home until 31 January 1969. Much more material and labor was furnished to the home by plaintiff after 12 July 1967 than was furnished before that date. At various times defendants paid plaintiff a total of $62,750.00, and "while the record is not clear as to the dates, amounts and exact work for which defendants paid to plaintiff a total of $62,750.00, it is probable that plaintiff has been paid in full by defendants for all work done by her prior to July 12, 1967." "That from time to time as work progressed on the house, the parties agreed upon certain extras, which amounted to $8,520.35; that the dates upon which these extras were agreed upon or were furnished by plaintiff do not appear in the record; that the record reveals that defendants paid to plaintiff $950.00 for roof extras, paid to plaintiff $62,750.00 in addition, and that plaintiff claims the amount of $12,008.79 as being due her under the contract, including extras, or a total of $75,708.79."

Based on these findings of fact, the court made the following:

"CONCLUSIONS OF LAW:

"1. That while the only general contractors license which plaintiff had during the time she worked on defendants' home authorized her to work only on projects having a maximum value of $75,000.00 each, and while it is possible that defendants' home had a contract price or value of slightly more than this amount when the basic contract price and the price for extras are added together, the record is not sufficiently clear for the court to say that the total contract price was or was not in excess of $75,000.00. Therefore, the conclusions reached herein do not reflect a determination upon this point.

"2. That the basic contract for $67,500.00 remained in effect throughout the course of dealing between the parties, and the extras were merely supplemental thereto and were the sort of changes that, often and perhaps usually, occur during the course of the construction of a house of this price.

"3. That since the plaintiff never had any North Carolina general contractors license prior to July 12, 1967, that since the basic contract was entered into about March 15, 1967, at a time when plaintiff was unlicensed, and since plaintiff did do a considerable amount of work under the contract prior to July 12, 1967, the court finds that said contract as supplemented by the extras, which is the real basis of this action, was and is in violation of Chapter 87, Article 1, of the General Statutes of North Carolina and that plaintiff is not entitled to recover thereon in view of defendants' plea in bar set forth in their first further answer and defense.

"4. That plaintiff's motion for summary judgment should be denied.

"5. That defendants' motion for summary judgment on the matters and things raised by their first further answer and defense should be granted and allowed."

In accord with these conclusions of law, the court entered judgment granting defendants' motion for summary judgment

on the matters raised by their plea in bar and dismissing plaintiff's cause of action, retaining the case for hearing upon defendants' counterclaim. To the entry of this judgment plaintiff excepted and appeals.

*Harkey, Faggart, Coira & Fletcher, by Henry L. Harkey, Harry E. Faggart, Jr., and Francis M. Fletcher, Jr., for plaintiff appellant.*

*Ruff, Perry, Bond, Cobb & Wade, by James O. Cobb, for defendant appellees.*

PARKER, Judge.

[1] By contracting with defendants and undertaking to construct a house for them at the agreed price of $67,500.00, plaintiff became a "general contractor" and engaged in the business of general contracting in this State within the definition contained in G.S. 87-1. Thereby she became subject to the licensing provisions of G.S. 87-10. Unless she substantially complied with those provisions, she may not recover against defendants either on her contract or upon *quantum meruit. Builders Supply v. Midyette,* 274 N.C. 264, 162 S.E. 2d 507; *Construction Co. v. Anderson,* 5 N.C. App. 12, 168 S.E. 2d 18. It is our opinion, however, that the factual situation presented in the present case is sufficiently different from the situations which were presented in *Builders Supply v. Midyette* and in *Construction Co. v. Anderson, supra,* as to require that we distinguish it. In our opinion the plaintiff in the present case, in the course of performing her contract with defendants, did substantially comply with the licensing requirements of the statute so that she is entitled to maintain her action upon the contract.

In *Builders Supply v. Midyette, supra,* the plaintiff stipulated that at all times pertinent to the litigation it was not licensed to construct buildings where the cost was $20,000.00 or more. In *Construction Co. v. Anderson, supra,* the parties also stipulated that while the plaintiff had previously held a limited license as a general contractor, this license had expired some months before the contract was entered into and was not renewed after its expiration. Thus, each of those cases presented a situation in which the party who acted as a general contractor was unlicensed not only at the time the contract was entered into but at all times thereafter while undertaking to perform

under it. Under those circumstances the Supreme Court in *Builders Supply v. Midyette, supra,* and this Court in following that decision in *Construction Co. v. Anderson, supra,* held that the unlicensed contractor could not maintain its action.

[2, 3] In the present case plaintiff was not licensed when the contract was entered into on or about 15 March 1967 nor when she commenced construction of the house shortly after 5 May 1967. She did, however, receive a valid limited general contractor's license on 12 July 1967 which entitled her under G.S. 87-10 to engage in general contracting in this State with respect to any single project of a value not in excess of $75,000.00. She continued to hold this license until and after 31 January 1969, when she ceased work on the house. Thus, she did hold a valid license for eighteen and one-half months out of the total of approximately twenty-one months during which she was engaged in constructing defendants' house. For 88 percent of the construction time, during which the major portion of the construction work was performed, she was duly licensed. For such portion of the work as she did perform prior to 12 July 1967 while she was unlicensed, she has already been paid. As pointed out in the opinion in *Builders Supply v. Midyette, supra,* the purpose of Article 1 of Chapter 87 of the General Statutes is to protect the public from incompetent builders. We do not see how that purpose would be promoted by denying the plaintiff under the circumstances of this case the right to maintain her action on the contract here sued upon.

We note that if the cost of the "extras," which amounted to $8,520.35, is added to the basic contract price of $67,500.00, the result may be that the building "project" had a value slightly in excess of $75,000.00, while plaintiff, as holder of a limited license, was not entitled to engage in the practice of general contracting "with respect to any single project of a value in excess of seventy-five thousand dollars ($75,000.00)." G.S. 87-10. The trial judge concluded that the record before him on the motions for summary judgment was not sufficiently clear for the court to determine this matter and expressly declined to base his determination upon that point. We agree that the record was not sufficiently clear to permit the court in ruling on a motion for summary judgment to determine whether defendants' house with the "extras" was or was not "a single project of a value in excess of seventy-five thousand dollars," within the meaning of G.S. 87-10. On this record we do not reach the ques-

tions whether the "extras" could or should be considered as separate projects, or as new contracts, or as renegotiations and renewals of the original contract. We note, however, that even if it should be determined that the "project" with the "extras" added was a single project having a value in excess of $75,000.00, *Tillman v. Talbert,* 244 N.C. 270, 93 S.E. 2d 101, which was one of the cases cited and relied upon in the opinion in *Builders Supply v. Midyette, supra,* is authority supporting plaintiff's right to recover at least upon a *quantum meruit* for work done on the contract up to the time that changes, made at the request of defendants, resulted in the project having a value in excess of the limitations of plaintiff's license.

The summary judgment sustaining defendants' plea in bar and dismissing plaintiff's action is reversed and this cause is remanded.

Reversed and remanded.

Chief Judge MALLARD and Judge VAUGHN concur.