HICKORY FURNITURE MART, INC. v. HENRY BURNS, D/B/A HENRY BURNS CONSTRUCTION CO.

No. 7625SC564

(Filed 15 December 1976)

1. Contracts § 6— general contractor defined

A general contractor is one who undertakes to build an entire building.

Furniture Mart v. Burns

2. Contracts § 6— contractors' licensing statute — cost of undertaking

The cost of the undertaking by a contractor, not the owner's total cost of the building, determines the status of the contractor for purposes of the licensing statute.

3. Contracts § 6— contractors' licensing statute — control over expenses

If a contractor has no control over the purchase of materials or other expenses which the owner might incur, he cannot insure that the cost limitation of the licensing statute is not exceeded, and he does not fall within the definition of a general contractor.

4. Contracts § 6— contract in excess of contractor's license — summary judgment — genuine issue as to whether defendant was general contractor

The trial court erred in granting summary judgment for plaintiff on defendant's counterclaim for an amount allegedly due for construction of a showroom addition for plaintiff on the ground that defendant was a general contractor who undertook construction exceeding the $75,000 (later increased to $125,000) limitation of his contractor's license where there was a genuine issue of material fact as to whether defendant was the general contractor for the project or whether defendant acted only as a construction supervisor and plaintiff acted as its own general contractor.

5. Contracts § 6— unlicensed contractor — enforcement of contract as set-off

While an unlicensed general contractor cannot affirmatively enforce his contract or recover on the basis of *quantum meruit,* the contractor can enforce his contract defensively, as a set-off, to claims asserted against him, though the set-off cannot exceed his adversary's claims.

APPEAL by defendant from *Kirby, Judge.* Judgment entered 30 April 1976 in Superior Court, CATAWBA County. Heard in the Court of Appeals 18 November 1976.

In the mid-1950's, Henry Burns, the defendant, went to work for Charles Mull, proprietor of Mull's Motel, as a maintenance man. In 1956, Mull's Motel incorporated. Sometime thereafter, it entered the furniture sales business, and in 1974, the plaintiff, Hickory Furniture Mart, Inc., was "spun-off" from the parent, Mull's Motel, Inc. G. Leroy Lail, a longtime associate, became president of the Hickory Furniture Mart, Inc. During this entire period, Henry Burns worked for these men and their businesses, and among his duties was that of repairman and builder. In 1968 or 1969, they helped Burns obtain a limited general contractor's license, permitting him to undertake the construction of buildings worth no more than $75,000 (later increased by statute to $125,000). In addition,

they helped Burns begin to do business as the Henry Burns Construction Company. Their clear purpose was to obtain a licensed "in-house" builder, in accordance with regulations of the City of Hickory. In June 1974, Burns began construction of an addition to the Hickory Furniture Mart showroom, though there was no written contract between the parties. The cost of this addition exceeded $325,000, and the construction did not satisfy the plaintiff. A dispute arose about compensation owed to Burns, and on 19 February 1975, Burns filed a claim of lien against the Hickory Furniture Mart, Inc., for $31,000 compensation outstanding plus $12,551.23 allegedly owed by Hickory to various contractors but charged to Burns' credit.

On 28 March 1975, plaintiff filed a complaint, verified by G. Leroy Lail, alleging two causes of action. In the first cause of action, plaintiff alleged that it had employed defendant for many years; that defendant obtained a contractor's license with its help; that it first paid defendant an hourly wage plus bonuses; that after defendant began doing business as Henry Burns Construction Co., plaintiff and defendant entered a continuing course of business whereby defendant performed construction work for which he was compensated in an amount equal to his labor and material expenses plus a percentage of these expenses; that defendant also occasionally received bonuses; that in June 1974, defendant began the addition in question for which he was to be paid expenses plus 10 percent; that this amounted to only $14,628.96, which he received; that his duties also included supervision of the other workers and contractors on the project; that in recognition of this added duty, defendant received, gratuitously, bonuses amounting to $5,500; that the work was improperly done; and, finally, that the cost of repairs was $16,000. Wherefore, plaintiff prayed for $16,000 actual damages.

In the second cause of action, plaintiff alleged that defendant did not agree to act as general contractor for the showroom addition; that defendant was not the general contractor; that plaintiff, itself, entered into subcontracts with the subcontractors; that defendant entered into no subcontracts; that plaintiff owed defendant nothing for supervising the work of the subcontractors; that plaintiff was unaware of any moneys owed by it to subcontractors but charged to the credit of defendant; and, that, consequently, defendant maliciously interfered with plaintiff's business when he filed his claim of lien against plain-

tiff. Wherefore, plaintiff prayed for $50,000 damages and an order dissolving defendant's lien.

The defendant Henry Burns, in his verified answer filed 8 April 1975, denied the allegations of plaintiff's complaint except as admitted in his counterclaim. In his counterclaim, defendant alleged that he had established a course of dealing with G. Leroy Lail and Mull's Motel, Inc.; that this continued after the Hickory Furniture Mart, Inc., was created and Lail became its president; that the terms of their relation provided that defendant perform some construction work and supervise the rest, for which he would be reimbursed for his expenses plus receive a percentage of the total cost of the project; that in consideration for building the furniture showroom, he was to receive an amount equal to his expenses for material and labor plus ten percent of the total cost of the showroom; that the compensation he received for supervising the subcontractors was not a bonus but a regular part of the contract; that he had been reimbursed for his expenses for labor and materials; that, however, he had not been paid the agreed upon compensation for supervising the work done by subcontractors; that despite negotiations with G. Leroy Lail, plaintiff refused to pay defendant; and, that defendant filed a claim of lien, which was appended to his counterclaim. According to the claim of lien plaintiff owes defendant $31,000 which is ten percent of $325,000, i.e., the total amount of materials and work furnished by subcontractors, plus $4,000 loaned to plaintiff less $5,500 already paid. The lien also indicates that plaintiff owed to subcontractors $12,551.23 which is currently charged to the credit of the defendant.

Plaintiff filed a verified reply and alleged that a course of dealing existed between plaintiff and defendant; that G. Leroy Lail established this course of dealing on behalf of plaintiff; that defendant was to be compensated for his labor and certain miscellaneous materials, plus a percentage thereof, plus bonuses; that plaintiff paid bonuses equal to five percent of some, but not all, of the additional expenditures made by plaintiff, but that this figure was arbitrary and discretionary; that prior to and during the construction of the furniture showroom, defendant worked almost exclusively for plaintiff; that the contract for the addition was no different from their existing course of business; that defendant was not paid a commission equal to ten percent of the cost of the subcontractors' labor and ma-

Furniture Mart v. Burns

terials; and, that though plaintiff paid defendant $5,500, this payment was a bonus and entirely discretionary. Wherefore, plaintiff prayed that defendant recover nothing on his counterclaim.

Plaintiff moved for summary judgment on defendant's counterclaim. Plaintiff alleged that the undisputed facts of the case show that defendant at all times was an improperly licensed general contractor; that he was prohibited from building plaintiff's addition; and, that he was barred by law from enforcing his construction contract and claim of lien. Plaintiff attached an affidavit showing that defendant's contractor's license was limited to undertakings of no more than $75,000 and that this limit was increased by statute to $125,000. Another affidavit stated that no money owed by plaintiff was charged to the credit of defendant.

Defendant, Henry Burns, filed a counter-affidavit swearing that he never acted as a general contractor but only as a construction supervisor and labor subcontractor who was paid an amount equal to his own expenses for labor and materials, plus ten percent thereof, plus ten percent of the total cost of labor and materials incurred by other subcontractors. Defendant averred that plaintiff hired all of the subcontractors, and contracted for large quantities of basic materials such as brick and structural steel. Defendant also said that plaintiff exercised that day-to-day control over the project which is the mark of a general contractor. In short, defendant stated that plaintiff acted as its own contractor. Finally, defendant averred that the total cost of his undertaking, including his labor and materials, his percentage thereof, and his percentage of all other costs, equaled only $32,500.

The court entered summary judgment for the plaintiff. It appears from the judgment that the court first considered defendant's answer, counterclaim and claim of lien and, from these papers, determined that defendant undertook to construct a building worth $325,000, in consideration for which he received compensation equal to his expenses for labor and materials plus ten percent of the cost of the entire undertaking. The court determined from affidavits filed that defendant's contractor's license was limited to $75,000 (later increased to $125,000). Accordingly, the court concluded that defendant's claim was barred as a matter of law, since there was no gen-

uine issue of fact material to the question of whether defendant was a general contractor, with a limited license, who undertook a building the value of which exceeded the limit endorsed upon his license. Defendant appeals from summary judgment dismissing his counterclaim.

*Thomas W. Warlick and Corne & Pitts, by Larry W. Pitts, for plaintiff appellee.*

*Tate and Young, by E. Murray Tate, Jr., for defendant appellant.*

ARNOLD, Judge.

Summary judgment was entered for plaintiff based on the conclusion that defendant was a general contractor, as defined by G.S. 87-1, and that defendant was not entitled to recover on the construction contract since he held a limited contractor's license. G.S. 87-10 provides that the holder of a limited contractor's license is not entitled to engage in the practice of general contracting "with respect to any single project in excess of one hundred twenty-five thousand dollars . . . . " (Before July 1974 the limitation was seventy-five thousand dollars.)

Error is assigned to the granting of the summary judgment. Defendant contends that there is a genuine issue of material fact as to whether he was a general contractor. A general contractor is defined in G.S. 87-1 as

" . . . one who for a fixed price, commission, fee or wage, undertakes . . . to construct any building . . . or any improvement or structure where the cost of the undertaking is thirty thousand dollars ($30,000) or more . . . . "

[1]  A general contractor is one who undertakes to build an entire building. The fact that a subcontractor erects the walls and roof, puts in the subfloor, installs doors, windows, siding and shelves, and paints the building, does not make him a general contractor. *Vogel v. Supply Co.,* 277 N.C. 119, 177 S.E. 2d 273 (1970). Where one contracts with a landowner to undertake the construction of a house for the landowner at an agreed price of [thirty thousand dollars or more] he is a "general contractor" and subject to the provisions of the licensing statute. *Holland v. Walden,* 11 N.C. App. 281, 181 S.E. 2d 197 (1971).

[2, 3]  In *Fulton v. Rice,* 12 N.C. App. 669, 184 S.E. 2d 421 (1971), this Court held that the contractor is a general contrac-

tor within the scope of the statute only where the cost of that contractor's undertaking exceeds [$30,000 or more]. It is the cost of the undertaking by the purported contractor that controls. The contract price, or cost of the contractor's undertaking, is not always the same as the total cost of the building. The owner's total cost of the building is not determinative of the contractor's status. If the situation is such that the contractor has no control over the purchase of materials or other expenses which the owner might incur, he cannot insure that the statutory cost limitation is not exceeded, and he does not fall within the definition of a general contractor. *Fulton v. Rice, supra,* at 672.

Upon plaintiff's motion for summary judgment, the trial court considered the defendant's claim of lien and defendant's Answer and Counterclaim, and found that defendant "undertook to construct a building" which cost at least $325,000. The court found the further fact, disclosed by both parties' affidavits, that defendant had a limited license as a general contractor. (This limit was $75,000 prior to 1 July 1974 and $125,000 after July 1974.) It concluded that, since the value of the building exceeded the limit of defendant's license, his claim was barred by G.S. 87-1 and cases thereunder.

[4] Summary judgment was improper. There is a material issue of fact as to the size and scope of defendant's undertaking and whether defendant was a general contractor. Defendant alleges numerous facts which show he lacked the control of a general contractor over the undertaking. Among these are his assertions that it was plaintiff who selected and purchased building material, and directly employed subcontractors. In addition, defendant's affidavit stated that he never acted as a general contractor, but that he was a "construction supervisor." Defendant further avowed that Mr. Leroy Lail acted as overall manager of the project, and that defendant never knew from day to day whether he was employed for the next day. While there are inconsistent allegations in defendant's pleadings and claim of lien, there is a triable issue as to defendant's status.

Moreover, plaintiff's complaint and reply allege "an employment arrangement" with defendant, and that defendant had duties as a supervisor. The complaint alleges that plaintiff contracted directly with many subcontractors, and plaintiff's second cause of action specifically alleges that there was never

any "discussion or agreement, written or oral, with regard to defendant acting as a general contractor" for the project. In fact, paragraph VII alleges "that the plaintiff had no contract with the defendant . . . . "

All of the pleadings and affidavits present a general issue of material fact as to whether defendant was a general contractor.

[5]    Defendant's counterclaim may not be entirely barred even if he is found to be a general contractor who exceeded the limits of his license. Section 87-10 of the North Carolina General Statutes says, "the holder of a limited [general contractor's] license . . . shall not be entitled to engage [in general contracting] with respect to any single project of a value in excess" of $125,000. The statute is criminal. Its purpose is to protect the public from incompetent builders by forbidding them to maintain an action on their contracts, thereby discouraging them from undertaking projects beyond their capabilities. *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968). An unlicensed contractor cannot affirmatively enforce his contract; neither can he recover in *quantum meruit*, because this would achieve the result forbidden at law. *Holland v. Walden, supra.* However, a general contractor can enforce his contract defensively, as a set-off, to the claims asserted against him, though the set-off cannot exceed his adversary's claims. *See, Bui'ders Supply v. Midyette, supra*, at 273 (dicta) ; *Culbertson v. Cizek*, 225 Cal. App. 2d 451, 37 Cal. Rptr. 548 (1964). This exception limits the penalty paid by the unlicensed builder to the amount he actually expended on the contract and no more.

Finally, defendant correctly contends that the $4,000 advanced the plaintiff as a loan, of which $3,500 was repaid, had nothing to do with his status as a contractor. Inasmuch as plaintiff's reply admits that the balance of $500 has not been paid, the defendant is entitled to recover the $500 which plaintiff admittedly owes.

The summary judgment dismissing defendant's counterclaim and claim of lien is reversed and the cause is remanded.

Reversed and remanded.

Judges MORRIS and CLARK concur.