REVIS SAND AND STONE, INC., PLAINTIFF v. HUBERT G. KING, JR., DEFENDANT, AND JOAN P. WHITMIRE AND HUSBAND, WALTER C. WHITMIRE, THIRD PARTY DEFENDANTS.

No. 8029DC85

(Filed 7 October 1980)

1. Contracts § 6.1– contract to build house for $30,000 – defendant unlicensed contractor – no recovery for construction

Defendant builder was not entitled to recover from third party defendants for the construction of a house either upon the parties' contract or in quantum meruit, since defendant was not a licensed contractor at the time he entered into the contract with third party defendants, and there was no merit to defendants' contention that the contract must *exceed* $30,000 before he was required to be licensed.

2. Contracts § 6.1– licensing of contractor – cost of building determinative

The cost of a building, which is usually the contract price, as opposed to the total completed cost, determines whether the $30,000 limit of G.S. 87-1 has been violated and thus whether the contractor must be licensed.

APPEAL by defendant King from *Gash, Judge.* Judgment filed 16 October 1979 in District Court, HENDERSON County. Heard in the Court of Appeals 27 August 1980, at Waynesville, North Carolina.

Plaintiff brought this action to recover the cost of building materials sold to defendant King for use in the construction of a home for Joan P. Whitmire and Walter C. Whitmire, third party defendants. King admitted plaintiff's allegations and instituted a third party action against the Whitmires, alleging that

he had not been paid the balance due for labor and materials used in construction of the home.

On 30 September 1978 King and Mrs. Whitmire executed a construction contract, which was entered as an exhibit. King, who was not licensed as a contractor pursuant to North Carolina statutory requirements at that time, agreed to construct a dwelling for Mrs. Whitmire for $30,000. The evidence tended to show that during construction Mrs. Whitmire requested and King provided materials and labor, aggregating over $7,000, for additions and changes to the dwelling. The Whitmires paid King $26,700 on the original contract and refused to pay the balance of the sum King alleged was due him.

At trial without a jury, King admitted liability to plaintiff and judgment was entered in the amount requested. At the conclusion of defendant's evidence against third party defendants, the latter's motion for involuntary dismissal under Rule 41(b), North Carolina Rules of Civil Procedure, was granted on grounds that defendant was not a licensed contractor at the time the contract was entered into. Defendant appeals from the dismissal.

*Redden, Redden & Redden, by Monroe M. Redden, for defendant appellant.*

*Prince, Youngblood, Massagee & Creekman, by Boyd B. Massagee, Jr., for third party defendant appellees.*

MARTIN (Harry C.), Judge.

[1] Defendant argues that although he was not a licensed contractor, he was not subject to the licensing requirements of Chapter 87 of the General Statutes of North Carolina and that the contract he entered into with defendants is therefore valid. He also urges that he is entitled to compensation in *quantum meruit* for the additional expenditures ordered by third party defendants which exceeded the contractual amount. We agree with the trial court that defendant is not entitled to recovery based either upon contract or *quantum meruit*.

N.C.G.S. 87-1 defines a "general contractor" as:

[O]ne who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct any building ... or any improvement or structure where the cost of the undertak-

ing is *thirty thousand dollars ($30,000) or more* and anyone who shall bid upon or engage in constructing any undertakings or improvements above mentioned in the State of North Carolina costing *thirty thousand dollars ($30,000) or more* shall be deemed and held to have engaged in the business of general contracting in the State of North Carolina. (Emphasis added.)

One who acts as a general contractor must be licensed pursuant to N.C.G.S. 87-10. N.C.G.S. 87-13 provides for a criminal penalty for violation of the licensing requirement:

Any person, firm or corporation not being duly authorized who shall contract for or bid upon the construction of any of the projects or works enumerated in G.S. 87-1, without having first complied with the provisions hereof, or who shall attempt to practice general contracting in this State ... shall be deemed guilty of a misdemeanor and shall for each such offense of which he is convicted be punished by a fine of not less than five hundred dollars ($500.00) or imprisonment of three months, or both ....

[1,2]   Defendant has admitted he was not licensed at the time he entered into the contract. Although defendant also concedes that the contract in question was for $30,000, he would have us interpret the statute to apply only if the amount of the contract exceeds $30,000, citing *Fulton v. Rice,* 12 N.C. App. 669, 184 S.E. 2d 421 (1971), as authority for his position. In *Fulton* the original estimate was for an amount less than the statutory limit, which at that time was $20,000. This Court held that the statute must be strictly construed because of the criminal penalties imposed. The cost of the undertaking, which would usually be the contract price, as opposed to the total completed cost, determines whether the statutory limit has been violated and thus whether the contractor must be licensed. *Id.* The contractual cost in the present case is exactly that stated in the statute. To accept defendant's argument that the contractual amount is within the limit if it does not exceed $30,000 would be to contradict the plain statutory language. *See also Vogel v. Supply Co.,* 277 N.C. 119, 177 S.E. 2d 273 (1970).

The purpose of N.C.G.S. 87-1 "is to protect the public from incompetent builders." *Builders Supply v. Midyette,* 274 N.C.

Sand and Stone, Inc. v. King

264, 270, 162 S.E. 2d 507, 511 (1968). For this reason our courts have consistently held that one who violates the licensing requirement for general contractors not only subjects himself to criminal sanctions but may not recover on the contract itself.

> When, in disregard of such a protective statute, an unlicensed person contracts with an owner to erect a building costing more than the minimum sum specified in the statute, he may not recover for the owner's breach of that contract. This is true even though the statute does not expressly forbid such suits.

*Id.* at 270, 162 S.E. 2d at 511. *See also Vogel, supra.*

The same policy applies to an action in *quantum meruit* or unjust enrichment:

> The same rule which prevents an unlicensed person from recovering damages for the breach of a construction contract has generally been held also to deny recovery where the cause of action is based on *quantum meruit* or unjust enrichment. ... To deny an unlicensed person the right to recover damages for breach of the contract, which it was unlawful for him to make, but to allow him to recover the value of work and services furnished under that contract would defeat the legislative purpose of protecting the public from incompetent contractors. ... The importance of deterring unlicensed persons from engaging in the construction business outweighs any harshness between the parties and precludes consideration for unjust enrichment.

*Builders Supply, supra* at 273, 162 S.E. 2d at 512-13. *See also Helms v. Dawkins,* 32 N.C. App. 453, 232 S.E. 2d 710 (1977); *Furniture Mart v. Burns,* 31 N.C. App. 626, 230 S.E. 2d 609 (1976).

Substantive law precludes defendant from any recovery. For this reason we must affirm the trial court's dismissal of King's third party action.

Affirmed.

Judges CLARK and HILL concur.