LOUISE PHILLIPS v. HARRIE PARTON

No. 8130SC1256

(Filed 19 October 1982)

**Contracts § 6.1— unlicensed general contractor—directed verdict against contractor's counterclaims proper**

The trial court did not err in directing a verdict for plaintiff against defendant's counterclaim for an alleged breach of contract where the court found defendant was not a licensed general contractor under G.S. 87-1.

Judge VAUGHN dissenting.

APPEAL by defendant from *Sitton, Judge.* Judgment entered 19 June 1981 in Superior Court, JACKSON County. Heard in the Court of Appeals 14 September 1982.

Defendant appeals from dismissal of his counterclaim in plaintiff's suit for breach of a building contract. To defeat defendant's counterclaim, plaintiff had established that defendant was not a licensed general contractor under G.S. 87-1.

*Holt, Haire & Bridgers, by Ben Oshel Bridgers, for plaintiff-appellee.*

*Herbert L. Hyde and G. Edison Hill for defendant-appellant.*

HILL, Judge.

In this civil action, plaintiff sought injunctive relief barring defendant from access to plaintiff's property and damages for the alleged breach of a construction contract. Defendant counterclaimed, seeking $9,000 on the original contract plus $9,311.30 for extra work, change orders and additions to the residence. The judge granted plaintiff's motion for directed verdict against defendant's counterclaim on grounds that defendant's failure to meet licensing requirements for general contractors (G.S. 87-10) precluded his recovery on the contract or in *quantum meruit.*

Defendant presents two questions for review: (1) whether the directed verdict against defendant's counterclaim was improvidently granted; and (2) whether the court correctly excluded defendant's evidence of ".extras." Since defendant offers no argument in support of the latter assignment of error, we deem it abandoned. Disposition of the remaining question hinges on the propriety of the trial judge's finding that defendant was a general contractor. We hold that the trial judge properly found defendant to be a general contractor and, therefore, properly dismissed the counterclaim for defendant's failure to comply with the licensing statute. We affirm the judgment below.

Defendant is a farmer and sawmill operator with limited building experience. He is not a licensed building contractor. Although illiterate, he can sign his name. Plaintiff asked defendant to sell her some logs for a house which she also asked him to construct. Plaintiff had rough plans prepared and revised. After agreeing to further changes in the plans, the parties entered into a construction contract providing:

> I, *Harrie Parton,* agree to complete log and stone house for Louise Phillips in Jackson County, N.C. according to the changes in final blue prints for $39,000 . . . .

The parties later agreed upon a payment schedule and made additional changes in the original agreement. Certain "extras" were added. Defendant started construction, receiving three installment payments of $10,000 each. A dispute arose between the parties as a result of which plaintiff refused to pay both the $9,000 balance due under the original contract and the amount claimed for "extras." In turn, defendant refused to let plaintiff enter the

house. Plaintiff's action for breach of contract and injunctive relief ensued. Following dismissal of plaintiff's claim, the trial court dismissed defendant's counterclaim, concluding that since defendant was a general contractor as defined by G.S. 87-1, his failure to be licensed barred recovery.

The pertinent part of G.S. 87-1 states:

> any person . . . who for a fixed price . . . undertakes . . . to construct or who undertakes to superintend or manage, on his own behalf or for any other person . . . that is not licensed as a general contractor pursuant to this Article, the construction of any building . . . where the cost of the undertaking is thirty thousand dollars ($30,000) or more, shall be deemed a "general contractor" . . . .

One who contracts with a landowner to construct a house at an agreed price [of thirty thousand dollars or more], is a general contractor and subject to the provisions of the licensing statute. *Holland v. Walden,* 11 N.C. App. 281, 181 S.E. 2d 197, *cert. denied,* 279 N.C. 349, 182 S.E. 2d 581 (1971). *See also Fulton v. Rice,* 12 N.C. App. 669, 184 S.E. 2d 421 (1971). In determining whether the builder is a general contractor within the scope of the statute, the cost of the undertaking is controlling. *See Furniture Mart v. Burns,* 31 N.C. App. 626, 230 S.E. 2d 609 (1976). The general contractor may be distinguished from a subcontractor or employee by the degree of control that he or she exercises over the entire project. *Vogel v. Supply Co.,* 277 N.C. 119, 177 S.E. 2d 273 (1970); *Furniture Mart v. Burns, supra.* An unlicensed general contractor may neither affirmatively enforce his contract nor recover in *quantum meruit. Holland v. Walden, supra.*

The trial judge correctly found that plaintiff and defendant had entered into a binding construction contract by which defendant was, in terms of G.S. 87-1, a general contractor. The defendant contended in rebuttal that, despite the contractual terms, he did not exercise sufficient control over the project to be the general contractor. In effect, the defendant asks us to find that he offered sufficient evidence of an alleged lack of supervisory control to turn his status as general contractor into a jury question. We find, however, that the evidence plainly indicated defendant was the general contractor, and that defendant failed to offer evidence that would indicate otherwise. Having failed to meet the

licensing requirements of G.S. 87-10, defendant was properly denied recovery, and the directed verdict against his counterclaim was properly granted.

Plaintiff's testimony tended to show that she contacted defendant Parton about building the house. Together they examined a prototype of the lodge plaintiff desired. Agreeing that logs from Parton's sawmill were to be used in the project, plaintiff had house plans prepared. The parties eventually reached an agreement concerning construction. Plaintiff testified that defendant was "in charge of all work, hired all men and pay [sic] all men." She stated without objection:

> After discussion of the materials, I and Parton reached an agreement that Parton was to build the house, complete the floors, the total house, put locks on the doors and give the keys to my satisfaction. A price of $39,000 was agreed upon. Parton was in charge of all work, hired all men and paid all men. He furnished all materials, paid for them from the $39,000 I was to pay Parton. Electrical construction work was done on the house. Parton paid for it . . . . Mr. Parton provided the rock masons. I did not hire plumbers . . . . I and my son were to finish the inside, install the plumbing, set the kitchen and the cabinets. Parton only stubbed the electrical work. We were to finish the electrical work. I was not to furnish anything except some steel. My son was in the steel erection business. My son and Parton worked out a supply and installation of the steel beams in the cathedral part of the big room to support the roof . . . .

Plaintiff noted that as construction progressed she and Parton agreed to changes in the plans and specifications. She became dissatisfied with his work. She questioned the quality of the logs and the manner in which they were caulked. She complained of buckled flooring and water seepage. She expressed distress that the work lagged, suggesting that if Parton could not finish it in time, she might try to do so.

On cross-examination, plaintiff said that she went with defendant to building supply houses to select materials, and that she selected almost everything except the lumber. She further testified:

I was on the premises almost every day from 5 May until about December. I went up there to look and supervise, I guess. A lot of things that's not in these plans were in the building. These are very basic plans . . . . I did not tell Mr. Parton the information that went into the building of the house on a daily basis, what to do and how to do it . . . . I could have a choice of this and I could have a choice of that . . . . I did change the structure of the roof because the roof was collapsing.

Defendant testified that since he could not read or write, plaintiff's son obtained the building permit. He also indicated that plaintiff made changes in the plans before and after construction began. As to the original agreement, Parton testified:

I agreed to furnish what stuff that I furnished and what we priced to buy . . . . What we'd priced in materials I agreed to build for $39,000 . . . . I used the draw money to buy materials to go into the building. I furnished the logs but I counted the money that she paid me for them. Just like she bought 'em from somebody else. She bought them from me. The other materials that went into the house that I put in that I didn't furnish myself I went to the store and bought them and paid for them myself . . . . I told Mrs. Phillips I had possession of the house until she paid me.

The record fails to disclose that plaintiff exercised control sufficient to render defendant a subcontractor or employee. The pleadings establish that defendant contracted to build the house for $39,000. Defendant was clearly in charge of the project. Plaintiff appeared to be on site only to select materials when needed and to inspect the house for faulty construction. The record reveals that the house was of extraordinary design, requiring selection of building materials from time to time and changes in construction to fit plaintiff's needs. It is an accepted fact that homeowners are often on site during construction. After discovering deficiencies in defendant's work, plaintiff frequented the site to ensure the quality of workmanship and building materials and to answer questions. Although she stated that she was present "to look and supervise, I guess," we find no evidence that she actually directed construction.

As general contractor, defendant advised plaintiff when he made changes which he considered "extras," indicating that since such changes were outside the original contract they merited additional compensation. His failure to meet the licensing requirements of G.S. 87-10, however, precludes his recovery. *Sand and Stone, Inc. v. King,* 49 N.C. App. 168, 270 S.E. 2d 580 (1980). Nor is defendant entitled to a setoff, since the trial court dismissed plaintiff's claim for damages, leaving nothing to which a setoff might attach. *See Builder's Supply v. Midyette,* 274 N.C. 264, 162 S.E. 2d 507 (1968). We overrule defendant's assignment of error.

The judgment of the trial judge is

Affirmed.

Judge HEDRICK concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting.

There were several paper writings. There was testimony from both sides as to the agreement of the parties. The evidence was conflicting. Defendant testified that Mr. Phillips agreed to be the contractor. Phillips obtained the building permits. There was other evidence from which conflicting inferences could be drawn. The jury should be allowed to draw those inferences and find where the truth lies. I vote to reverse and remand for trial.