ROBERT E. SAGER, JR. AND MARY ANN SAGER v. W. M. C., INC., LOG SYSTEMS, INC. AND LINCOLN LOG HOMES, INC.

No. 8219SC1146

(Filed 18 October 1983)

Contracts § 6.1 — unlicensed general contractor — supervision by licensed contractor — no recovery on contract

Unlicensed general contractors may not recover from the owners under a contract for construction of a home costing more than $30,000.00 when the unlicensed contractors have all worked supervised by a licensed general contractor. G.S. 87-1.

APPEAL by defendants from *Gaines, Judge.* Judgment entered 2 July 1982 in Superior Court, ROWAN County. Heard in the Court of Appeals 22 September 1983.

On 7 November 1980 plaintiffs filed an action against defendants for breach of contract. They alleged that defendants failed to construct plaintiffs' house before the contractual completion date, modified specifications in the house plan and breached both specific and implied warranties of workmanship. Plaintiffs further alleged that they sustained loss of use of the house and a diminution in its value because defendants were not and never have

been licensed general contractors as required by Article 1 of Chapter 87 of the General Statutes. Plaintiffs sought damages and removal of defendants' claim of lien against their property.

In their answer defendants admitted that they were not licensed general contractors. They alleged, however, that all work by them was supervised by a licensed general contractor. Defendants counterclaimed for $7,045, alleging that this sum was due and owing for contract work performed.

On 7 April 1982 plaintiffs moved for summary judgment as to defendants' counterclaim. Plaintiffs grounded their motion on defendants' status as unlicensed general contractors, and filed supporting affidavits and brief. In opposition to this motion defendants filed an affidavit averring that plaintiffs' house was constructed under the supervision of Isenhour Real Estate and Construction Company, Inc.; that Isenhour was licensed during the contractual period and that building permits regarding the construction were issued to Isenhour.

After considering the pleadings and affidavits filed by the parties, the trial court concluded that plaintiffs were entitled to a judgment as to defendants' counterclaim and declared the claim of lien against plaintiffs' property null and void.

*Alexander and Brown, by William G. Alexander, for plaintiff appellees.*

*Hamel, Hamel & Pearce, by Hugo A. Pearce, III, and Mary Jill Ledford, for defendant appellants.*

ARNOLD, Judge.

The issue before this Court is whether unlicensed general contractors may recover from owners for the owners' breach of a contract to construct a home costing more than $30,000 when the unlicensed contractors have all work supervised by a licensed general contractor. We believe that under the circumstances here, the trial court acted correctly in dismissing the defendant general contractors' counterclaim and granting summary judgment in plaintiff owners' favor.

The uncontroverted facts show that on 29 January 1979 plaintiffs and defendant W. M. C., Inc., entered into a contract

wherein plaintiffs agreed to purchase a "log home package." This contract was supplemented and modified in later agreements. In the 25 April 1979 contract W. M. C., Inc., as "contractor," agreed to furnish a "log package" to plaintiffs, to erect the foundation, to complete the sub-floor system, to contract electrical wiring, plumbing, heat and air packages and to install carpet, vinyl, and insulation. W. M. C., Inc., guaranteed that the work and materials would be first class and would meet county and state code requirements. In the 24 May 1979 contract, W. M. C., Inc., as "contractor," agreed to build a log home for plaintiffs for the contract price of $57,800. On 10 July 1980, defendant Log Systems, Inc., assumed the obligations of W. M. C., Inc., under these contracts. At no time during the contractual period were defendants licensed general contractors.

The law pertinent to these uncontested facts requires a general contractor to be licensed before entering into a contract to construct a building where the cost is $30,000 or more. *See* Article 1 of Chapter 87 of the General Statutes; *Builders Supply v. Midyette*, 274 N.C. 264, 162 S.E. 2d 507 (1968); *Furniture Mart v. Burns*, 31 N.C. App. 626, 230 S.E. 2d 609 (1976); *Construction Co. v. Anderson*, 5 N.C. App. 12, 168 S.E. 2d 18 (1969). At the time the parties entered into the contracts, G.S. 87-1 provided:

> [A] "general contractor" is defined as one who for a fixed price, commission, fee or wage, undertakes to bid upon or to construct any building . . . where the cost of the undertaking is thirty thousand dollars ($30,000) or more and anyone who shall bid upon or engage in constructing any undertakings or improvements above mentioned in the State of North Carolina costing thirty thousand dollars ($30,000) or more shall be deemed and held to have engaged in the business of general contracting in the State of North Carolina.

If an unlicensed general contractor constructs a project whose value equals or exceeds $30,000, then he "may not recover for the owner's breach of the contract, or for the value of the work and services furnished or materials supplied under the contract on the theory of unjust enrichment." *Helms v. Dawkins*, 32 N.C. App. 453, 455, 232 S.E. 2d 710, 711 (1977).

In the matter before us defendants referred to themselves as general contractors, agreed to construct a building for a price ex-

ceeding $30,000 and guaranteed that the work and materials would be first class. Their allegation that the construction was supervised by a licensed contractor is to no avail. We do not believe, as defendants contend, that by having their work supervised by a licensed contractor, defendants substantially complied with the licensing requirements of G.S. 87-1. "Article 1 of Chapter 87 clearly contemplates that a contractor should be licensed at the time of contracting and during the contract period." *Barrett, Robert & Woods v. Armi,* 59 N.C. App. 134, 139, 296 S.E. 2d 10, 14, *disc. review denied,* 307 N.C. 269, 299 S.E. 2d 214 (1982). The purpose of Article 1 is to protect the public from incompetent builders. *Builders Supply v. Midyette, supra.* By holding themselves out as general contractors with control over construction, defendants have subjected themselves to the licensing requirement. Furthermore, the public will not be protected from incompetent builders in such situations unless licensing is required. Specifically, plaintiffs' sole recourse for the defective construction of their house is against defendants. The licensed contractor who allegedly supervised construction is not a party to any contract with plaintiffs.

We are mindful of the amendment to G.S. 87-1, which now defines a "general contractor" as one:

> who for a fixed price, fee or wage, undertakes to bid upon or to construct or *who undertakes to superintend or manage, on his own behalf or for any person, firm* or corporation that is *not licensed as a general contractor* pursuant to this Article, the construction of any building . . . where the cost of the undertaking is thirty thousand dollars ($30,000) or more. [Emphasis supplied.]

G.S. 87-1 (Supp. 1981).

This Court raises the question without deciding whether the amended statute, if applicable, would aid defendants in their recovery. Since the amended statute did not become effective until 1 January 1982, the language in the earlier statute must control.

We are also aware of defendants' right to assert their claim against plaintiffs as a set-off to plaintiffs' claim for damages. *Builders Supply v. Midyette, supra.* In the order awarding summary judgment in plaintiffs' favor, the trial court allowed defend-

---

ants twenty days to amend their pleadings to allege a set-off. It appears from the record that defendants never amended their answer.

Defendants have failed to show the existence of a genuine issue for trial, and summary judgment for plaintiffs is

Affirmed.

Judges WELLS and EAGLES concur.